UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,

v.

Jeffery JACKSON, Defendant–Appellant, Cross–Appellee.

Nos. 88–1686, 88–2039.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1989.

Decided Sept. 25, 1989.

James G. Richmond, U.S. Atty. Office of the U.S. Atty., Hammond, Ind., Dennis Staffelbach, Thomas O. Plouff, and William T. Grimmer, Asst. U.S. Attys., Office of the U.S. Atty., South Bend, Ind., for the U.S.

Charles W. Lahey, South Bend, Ind., for Jeffrey Jackson.

Before POSNER, COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Jeffery Jackson was initially charged with participating in a scheme involving the alteration of postal money orders. Upon a request by the government, Jackson was ordered by the district court to provide handwriting exemplars to postal inspectors. Jackson refused repeatedly to comply. As a result he was charged with criminal contempt and ultimately convicted in a jury trial. Arguing that he was deprived of assistance of counsel at his presentence interview with a probation officer, Jackson now appeals the sentence imposed for his contempt conviction. His appeal of that sentence has been consolidated with the government's appeal of the district court's grant of Jackson's motion *in limine* in the underlying money order alteration case. The district judge in the money order case has prohibited the government from introducing evidence of Jackson's refusal to give handwriting exemplars. The trial of Jackson on the money order alteration charges was stayed by the district court, pursuant to 18 U.S.C. § 3731, to permit the government to bring an interlocutory appeal of the granting of the motion *in limine*. We find no sixth amendment right to assistance of counsel at a presentence interview conducted by a probation officer and affirm the sentence imposed for contempt. We reverse the order excluding evidence of Jackson's refusal to provide handwriting exemplars.

## Background

While serving a murder conviction sentence at the Indiana State Prison, Jackson was charged in a nine-count indictment.[1] The charges related to Jackson's alleged involvement with other inmates in a scheme in which United States postal money orders were altered inside the prison and mailed outside to be cashed. Prior to trial, the government requested that Jackson provide handwriting exemplars to postal inspectors. On October 30, 1987, Chief Judge Allen Sharp issued an order directing Jackson to furnish handwriting and hand-printing exemplars. On November 10, 1987, a postal inspector met with Jackson in order to obtain the ordered exemplars. Jackson refused to furnish handwriting specimens. On November 18, the government filed a petition for an order to show cause why Jackson should not be found in contempt for his refusal to obey the October order to furnish exemplars.

---

1. The nine-count indictment alleged various violations of 18 U.S.C. §§ 1341, 500, 371, and 2.

On November 20, 1987, a hearing was held on this matter and the government introduced testimony concerning the nature of the investigation and the significance and need for the court-ordered exemplars. The postal inspectors had been unable to discover sufficient "known" writings of Jackson for the document analyst to make a determination of authorship. After hearing the testimony, the district judge reaffirmed the October order and again directed Jackson to provide handwriting exemplars. Jackson was given until 5:00 p.m. that day to comply. However, in disregard for the court order Jackson again refused to provide handwriting exemplars.

Another petition to require Jackson to provide handwriting and printing exemplars was filed by the government. On December 11, 1987, a hearing was held on this motion. The district judge issued another order directing Jackson's compliance by 3:00 p.m. of that same day. For the third time, through his attorney, Jackson indicated his refusal to furnish handwriting exemplars. As a result Jackson was ordered to stand trial for criminal contempt of court pursuant to 18 U.S.C. § 401(3).

The contempt charge was transferred to Judge William C. Lee for trial. A jury trial was held and Jackson was convicted. Following the conviction Judge Lee, in open court in the presence of counsel and the defendant, referred the matter to the probation office for a presentence investigation and report pursuant to Rule 32(c) of the Federal Rules of Criminal Procedure. A presentence investigation was conducted which included an interview with Jackson by Probation Officer Joseph Wiley. Jackson's attorney was not present during the interview. A statement made by Jackson during the interview with the probation officer was one of the factors used by the district judge in handing down a sentence of 30–months imprisonment to run consecutive to his state sentence and a mandatory three-year term of supervised release. Jackson appeals the sentence imposed on his conviction for contempt.[2]

In the meantime, the government indicated to the district court its intention to elicit testimony regarding Jackson's refusal to provide exemplars for the trial on the underlying money order alteration charges. On the eve of trial, Jackson filed a motion *in limine* requesting Judge Sharp to exclude any testimony concerning his prior contempt conviction and refusals to provide exemplars. The motion to exclude this evidence was granted. The trial was stayed by the district court to allow the government to appeal the grant of the motion *in limine* as it pertains to the exclusion of evidence of Jackson's refusal to provide the court-ordered exemplars.[3]

### Right to Counsel During Presentence Interview

■■■ Jackson challenges the sentencing judge's use of statements he made to a federal probation officer in the course of a presentence interview. Jackson argues that his sixth amendment right to assistance of counsel was violated.[4] Consistent

---

**2.** In filing his appeal Jackson included a challenge to the constitutional validity of the Sentencing Guidelines. Subsequently, the Supreme Court in *United States v. Mistretta,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), upheld the constitutionality of the Sentencing Reform Act against the same challenges raised by Jackson.

**3.** The government does not contest the exclusion of the contempt conviction.

**4.** Jackson raises but does not develop a fifth amendment claim in this appeal citing *United States v. Chitty,* 760 F.2d 425, 431 (2d Cir.), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985). We seriously question the rationale applied in *Chitty,* or more significantly *Jones v. Cardwell,* 686 F.2d 754 (9th Cir.1982), in which

the Ninth Circuit found the privilege against self-incrimination applicable to a sentencing judge's use of a defendant's presentence interview statement to a probation officer. *Contra Baumann v. United States,* 692 F.2d 565, 576 (9th Cir.1982).

It is clear that the availability of the fifth amendment privilege does not turn on whether the proceeding in which it is used involves an adjudication of guilt or only punishment. Rather, the applicability of the fifth amendment relates to the nature of the defendant's statement and the exposure which it invites. *Estelle v. Smith,* 451 U.S. 454, 463, 101 S.Ct. 1866, 1873, 68 L.Ed.2d 359 (1981). However, of overriding significance is the fact that it was the exposure to the *state's*—that is the prosecution's—use of the defendant's statement made during a psychi-

with Jackson's assertion, there is no indication in the record before us that Jackson's counsel was informed of the date and time of the interview or that he was present when the interview was conducted.

During this postconviction custodial interview, Jackson told the probation officer that neither his defense counsel nor Judge Sharp advised him that his failure to provide the ordered handwriting exemplars could result in a charge of criminal contempt.

A presentence report was prepared by the probation officer and disclosed to counsel pursuant to the Sentencing Guidelines for United States Courts, sections 6A1.1 and 6A1.2. Sections 6A1.1 and 6A1.2 deal with sentencing procedures. Under these provisions, a probation officer is required (under most circumstances) to prepare a presentence report and the court is required to adopt procedures to provide disclosure of the presentence report to the parties. As the commentary to 6A1.2 discusses, "parties are required to respond to the presentence report and to identify any issues in dispute." In accordance with provisions of the Guidelines, the defendant disputed the section 3E1.1 sentencing factor in the presentence report which concerned whether or not he had accepted responsibility for his criminal conduct.[5] The court made a tentative finding that Jackson had not met the requirements of section 3E1.1 for acceptance of responsibility. Thereafter, in accordance with Guidelines section 6A1.3(b) the court gave the defendant an opportunity to submit written objections to the tentative findings. Finally, at sentencing the district judge addressed the defendant's written 3E1.1 ob-

jection (and two other objections not raised on appeal).

Judge Lee upheld his tentative findings. He specifically noted Jackson's statement to the probation officer and considered it under the provision of section 3E1.1 which provides that the sentencing court may reduce the offense level by two levels "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility...." In determining if a defendant qualifies for an offense level reduction under section 3E1.1, the commentary indicates that the sentencing judge may consider whether the defendant made a "[v]oluntary and truthful admission to authorities of involvement in the offense and related conduct." [Application Note 1(c)]. Judge Lee commented that he considered the statement made to the probation officer to be voluntary. Moreover, the judge determined that the recounting of Jackson's statement by the probation officer carried a sufficient indicia of reliability even if it would be inadmissible in other court proceedings. In doing so, Judge Lee relied on section 6A1.3(a) of the Sentencing Guidelines which states,

in resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.

*See also* 18 U.S.C. § 3661. Based on the transcript of the hearings before Judge Sharp (which clearly indicated that the defendant and his lawyer knew that Jack-

---

atric examination that the Supreme Court determined to be unconstitutional. As the Court stated, "to meet its burden [of proof on the death penalty] the State used respondent's own statements...." *Id.* at 467, 101 S.Ct. at 1875. Thereafter, the Court indicated that the same fifth amendment concerns presented by the prosecution's use of a defendant's statement to a psychiatrist are not necessarily presented by all types of interviews and examinations that might be ordered or relied upon to inform a sentencing determination. *Id.* at 470 n. 13, 101 S.Ct. at 1876 n. 13. Contrary to the view expressed in *Cardwell,* we do not believe that a federal pro-

bation officer acts on behalf of the prosecution. The custodial statements made by Jackson, which arguably exposed him to serious consequences, were not made to someone acting on behalf of the government prosecutors. Thus, the fifth amendment was not implicated.

5. Subsection (a) of section 3E1.1 advises the court: "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for the offense of conviction, reduce the offense level by two levels."

son's refusal to comply with the court orders would lead to a separate contempt charge), Judge Lee found that Jackson's statement to the probation officer was untrue. Although his statement was voluntary, Jackson had not made a truthful admission regarding his conduct. Judge Lee took the interview statement as evidence that Jackson "had not accepted responsibility" for his acts of contempt.[6] As a consequence, the judge declined to invoke section 3E1.1 to reduce the defendant's offense level.

Implicit in Jackson's sixth amendment argument is that the interview with the probation officer constituted a critical stage in the criminal proceedings. Also implicit is that absent the denial of his right to counsel, he would have been informed by his attorney that under the Sentencing Guidelines a judge may reduce the offense level if there is an affirmative acceptance of responsibility by a defendant for his criminal conduct. Thus, Jackson would not have lied to the probation officer during the presentence interview. As a result of this purported constitutional deprivation, Jackson claims the statement he made during the presentence interview was used to impose a greater sentence than he might have otherwise received.

Jackson relies on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), for the proposition that he was entitled to representation during his presentence interview with the probation officer. In *Estelle*, the defendant submitted to a court-ordered psychiatric examination for the purpose of determining his competency to stand trial for murder. At a sentencing hearing following conviction, the state called the psychiatrist who had conducted the pretrial psychiatric examination. In order to carry its burden of proof on the issue of the imposition of the death sentence at the penalty stage of the jury trial, the state elicited testimony from the psychiatrist that the defendant was a severe psychopath with no remorse for what he had done and therefore should receive the death penalty. The psychiatrist's testimony was based on his earlier pretrial examination which had been ordered to determine the defendant's competency to stand trial.

The Supreme Court held that the defendant's sixth amendment right to counsel had attached when the pretrial examination occurred. Failure to allow counsel to advise the defendant at this critical stage regarding the "significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed" was a violation of the defendant's right to legal representation. *Id.* at 471, 101 S.Ct. at 1877.

The sixth amendment right to counsel provides every defendant with the right to have representation during a "critical stage" of the adversarial proceedings. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Although the right attaches upon the commencement of adversarial proceedings, it only applies to "critical stages" of those proceedings where absence of defense counsel or lack of advice might derogate from the accused's right to a fair trial. The sixth amendment right to counsel also applies at critical stages in the sentencing phase of criminal proceedings. *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). However, as the Supreme Court emphasized in *Kirby v. Illinois*, 406 U.S. 682, 691, 92 S.Ct. 1877, 1883, 32 L.Ed.2d 411 (1972), "an accused is entitled to counsel at any 'critical stage of the *prosecution*,'..." (emphasis in original). Under the sixth amendment, the focus of the constitutional protection of right to counsel relates to the adversary character of criminal proceedings and the particular process involved. *Cf. United States v. Morrison*, 449 U.S. 361, 365,

6. After the presentence report was filed and made available to counsel, Jackson apparently submitted a letter with his objection to the report indicating that he accepted responsibility for his criminal conduct. The district judge exercised appropriate discretion and determined the belated "acceptance of responsibility" was not timely. *See* § 1(g) of Application Notes to § 3E1.1.

101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981); *Gerstein v. Pugh,* 420 U.S. 103, 123, 95 S.Ct. 854, 867, 43 L.Ed.2d 54 (1975). The Supreme Court's responsiveness to sixth amendment protection claims of right to counsel has been based on "proved claims that *governmental* conduct has rendered counsel's assistance to the defendant ineffective." *Morrison,* 449 U.S. at 365, 101 S.Ct. at 667 (citations omitted) (emphasis supplied). Whether a pretrial interview by a federal probation officer is a critical stage of criminal proceedings depends upon the nature of the probation officer's role in sentence determination.

■ Both the Fifth and Ninth Circuits have refused to extend the right to attendance of counsel at a defendant's presentence interview with a federal probation officer, reasoning that a presentence interview is not a critical stage of the proceedings. *Brown v. Butler,* 811 F.2d 938 (5th Cir.1987); *Baumann v. United States,* 692 F.2d 565 (9th Cir.1982); *see also United States v. Gonzalez–Mares,* 752 F.2d 1485 (9th Cir.1985). In both circuits, this determination was based on the fact that the probation officer did not act on behalf of the government (the prosecution) and because the sentencing judge exercised independent discretion and judgment in determining a defendant's sentence. In *Baumann,* the court reasoned that even if the probation officer recommended an aggravated sentence to the district judge because of the lack of remorse which he gathered from the defendant's responses during the interview, it remained the responsibility of the district judge to exercise his discretion in determining the appropriate sentence to be imposed. Thus, the *Baumann* court stated, "although [the defendant] may have been denied the advice of his attorney in making the 'significant decision of whether to submit to the [interview]' ... any such denial was constitutionally insignificant." 692 F.2d at 578.

Likewise in *Brown,* where the defendant submitted to a presentence interview by a probation officer without notice regarding advice of counsel, the Fifth Circuit found no violation of the defendant's sixth amendment rights. As the *Brown* court said, "a probation officer ... is an arm of the court charged with assisting the court at arriving at a fair sentence." 811 F.2d at 941.

Although both *Brown* and *Baumann* were decided prior to the implementation of the Sentencing Reform Act of 1984 (18 U.S.C. § 3551 *et seq.*) and the Sentencing Guidelines, their reasoning remains applicable.

A district judge's use of a defendant's statement to a probation officer in applying the Sentencing Guidelines is markedly unlike the *prosecutor's* adversarial use of a defendant's pretrial statement to a psychiatrist to carry the state's burden of proof before a jury. A federal probation officer is an extension of the court and not an agent of the government. The probation officer does not have an adversarial role in the sentencing proceedings. In interviewing a defendant as part of the presentence investigation, the probation officer serves as a neutral information gatherer for the sentencing judge. The interview of a defendant is but one of many aspects of the presentence investigation conducted by a probation officer.

There is little question that with the advent of the Sentencing Reform Act of 1984 and the Sentencing Guidelines the presentence report prepared by the probation officer requires greater attention by the parties. However, the role of the probation officer and the function of the presentence report has not been altered by the change in the law. It remains the sentencing judge's role to determine the facts in fashioning the appropriate sentence for a criminal defendant. The district judge is not bound by characterizations made by a probation officer in applying the Sentencing Guidelines. *United States v. White,* 875 F.2d 427, 434 (4th Cir.1989) (denying reduction of offense level under Guideline section 3E1.1). Notwithstanding the reduced discretion now afforded district judges under the Sentencing Guidelines, the duty and responsibility for imposition of sentence has not shifted from district judges to probation officers.

The pretrial statement made by the defendant in *Estelle* became a factor satisfying an element of the burden of proof borne by the prosecution in seeking the death penalty in a trial before a jury. *Estelle* is simply inapplicable on its facts and legal theory to a federal district judge's discretionary use of a defendant's postconviction statement made to a federal probation officer carrying out a nonadversarial presentence investigation.

We conclude that the sixth amendment right to assistance of counsel did not extend to Jackson's presentence interview by the federal probation officer.[7]

### Exclusion of Rule 404(b) Evidence of Jackson's Refusal to Comply With the Court Order

■ In the underlying money order alteration charges, the defendant filed a motion *in limine* seeking to prevent the introduction at trial of any evidence that he had repeatedly refused to furnish handwriting exemplars.[8] The district court held a hearing on the issue of whether the failure to provide the court-ordered exemplars should be excluded from the evidence at trial. After hearing the arguments, the district court granted the motion *in limine*. The court ruled that any evidence of other acts of Jackson not charged in the indictment, but subject to admission based on Federal Rule of Evidence 404(b), would be refused admission pursuant to Federal Rule of Evidence 403. Specifically excluded was Jackson's failure to provide the ordered exemplars.

In *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the Supreme Court examined the procedure for determining admissibility of evidence of other crimes, wrongs or acts permitted under Rule 404(b) of the Federal Rules of Evidence.[9] Our review of the admissibility of Jackson's refusal to provide handwriting exemplars will follow the Supreme Court's three-part analysis.

■ The threshold inquiry which must be made before admitting evidence of other crimes, wrongs or acts is whether such evidence is probative of a material issue other than character. *Id.* at ——, 108 S.Ct. at 1499. Evidence used to show a defendant's bad character through a mere propensity to commit other crimes is not admissible under Rule 404(b). *See United States v. Gometz*, 879 F.2d 256, 260 (7th Cir.1989); *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984). The nature of contumacious conduct of a defendant which thwarts access to evidence in a pending case is, however, an entirely different matter. A defendant's refusal to provide fingerprints, voice exemplars, or handwriting specimens deprives the government of evidence that is directly related to the defendant's guilt or innocence of the underlying crime. Such evidence of a defendant's refusal to comply with a lawful

---

**7.** While the sentencing procedures dictated by the Sentencing Guidelines section 6A1.1, *et seq.*, provide for involvement of counsel in review of the presentence report, there is no indication of a statutory right to counsel in the presentence interview of a defendant.

**8.** There is no doubt that requiring a defendant to give a handwriting specimen does not violate his fifth amendment privilege against self-incrimination since the privilege reaches only compulsion of a defendant's communication. *Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967). "A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection". *Id.* at 266–67, 87 S.Ct. at 1953 (citation omitted); *see also United States v. Mara*, 410 U.S. 19, 21, 93 S.Ct. 774, 776, 35 L.Ed.2d 99 (1973). Since handwriting exemp-

lars are not testimonial or communicative matters but instead are an "identifying physical characteristic" of the person, *Gilbert*, 388 U.S. at 266–67, 87 S.Ct. at 1953; *Schmerber v. California*, 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966), evidence of, or comment on the defendant's refusal to comply with the lawful court order for the handwriting exemplars is distinguishable from evidence of, or commenting on the defendant's constitutional rights to refuse to testify at trial, or to post-arrest silence.

**9.** Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

court order has been held to be admissible in other circuits on the ground that "[a]n attempt by a criminal defendant to suppress evidence is probative of consciousness of guilt and admissible on that basis." *United States v. Wagner*, 834 F.2d 1474, 1484 (9th Cir.1987) (quoting *United States v. Castillo*, 615 F.2d 878, 885 (9th Cir. 1980)).[10] In our circuit we have held that evidence of flight and concealment is admissible to show consciousness of guilt, as well as guilt itself. *United States v. Zabic*, 745 F.2d 464, 471 (7th Cir.1984) (citation omitted). We believe the evidence of the defendant's refusal to furnish writing exemplars, like evidence of flight and concealment, is probative of consciousness of guilt, or in other words guilty knowledge. Thus, because evidence of Jackson's refusal to provide handwriting exemplars is probative in regard to Jackson's knowledge of, and participation in, the money order scheme, the threshold inquiry of proper purpose for 404(b) evidence has been satisfactorily answered. Based on the foregoing discussion, it is also clear that the evidence probative of the defendant's guilty knowledge is relevant to facts of consequence in the case. As with any other crimes, wrongs or acts evidence, however, that relevance is conditioned on whether the jury can reasonably find that the defendant committed the other crimes, wrongs or acts sought to be admitted—in

this case whether Jackson refused a lawful court order to execute the handwriting exemplars. This brings us to the second part of the *Huddleston* analysis.

■ It must be determined next whether the evidence of other crimes, wrongs or acts is relevant under Rule 402—as enforced through Rule 104(b). 485 U.S. at ——, 108 S.Ct. at 1501–02. Evidence of other acts "is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor.... Such questions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b)." *Id.* Rule 104(b) provides that the court shall admit additional conditionally relevant evidence "upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." In the context of this case, which involves contumacious conduct in the pending litigation, the requirement of a finding of relevancy concerning the fact of whether the defendant committed the acts sought to be admitted presents a very low hurdle to be overcome. There is little doubt that a jury could reasonably find that Jackson refused to provide handwriting exemplars. We need not dwell on this factor and now turn to the balancing requirement under Rule 403.[11]

As the Court indicated in *Huddleston*, if other crimes, wrongs or acts are relevant

**10.** *See e.g., United States v. Terry*, 702 F.2d 299, 314 (2d Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 and 464 U.S. 992, 104 S.Ct. 482, 78 L.Ed.2d 680 (1983) (held defendant's refusal to furnish palm print was admissible as consciousness of guilt); *United States v. Knight*, 607 F.2d 1172, 1177 (5th Cir.1979) (comment on the defendant's failure to furnish handwriting exemplars is permissible); *United States v. Blankney*, 581 F.2d 1389, 1390 (10th Cir.1978) (court held testimony regarding refusal to provide handwriting exemplars was not prejudicial error); *United States v. McKinley*, 485 F.2d 1059, 1060–61 (D.C.Cir.1973) (upheld admission of evidence of defendant's failure to comply with court order not to shave prior to lineup); *United States v. Nix*, 465 F.2d 90, 95 (5th Cir.), *cert. denied*, 409 U.S. 1013, 93 S.Ct. 455, 34 L.Ed.2d 307 (1972), *reh'g denied, Nix v. United States*, 409 U.S. 1119, 93 S.Ct. 918, 34 L.Ed.2d 704 (1973) (comment on and jury instructions regarding defendant's refusal to provide handwriting exemplars were proper); *Owens v.*

*Wolff*, 532 F.Supp. 397, 399 (D.Nev.1981) (approving instruction that evidence of the defendant's failure to submit to court-ordered handwriting exemplars is probative of consciousness of guilt); *United States v. Franks*, 511 F.2d 25, 35–36 (6th Cir.), *cert. denied*, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975) (upheld instruction that jury could infer defendant's consciousness of guilt from his refusal to provide court-ordered voice exemplars).

**11.** Where the evidence sought to be introduced under Rule 404(b) represents acts similar to those charged, we have held that an additional factor regarding relevance is involved. That factor is whether the evidence shows that the other acts are similar enough and close enough in time to be relevant to the matter in issue. *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir.1984). However, where a court is confronted with acts of contempt, not offered because they are similar to the acts charged, this factor does not come into play.

and offered for a proper purpose under 404(b), "the evidence is subject only to general strictures limiting admissibility such as ... [Rule] 403." 485 U.S. at ——, 108 S.Ct. at 1500. The Court reiterated the congressional position that " '[T]he use of the discretionary word "may" with respect to the admissibility of evidence of crimes, wrongs, or other acts is not intended to confer any arbitrary discretion on the trial judge.' " (citations omitted). *Id.* at ——, 108 S.Ct. at 1501. Moreover, the Court noted the congressional intent that " 'with respect to permissible uses for such [404(b) ] evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i.e., prejudice, confusion or waste of time.' " *Id.* at ——, 108 S.Ct. at 1500. Under Rule 403, a district court may exclude evidence, even if relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, ... or by considerations of undue delay...." The key factor in the balancing test is plainly that relevant evidence should only be excluded if its probative value is *substantially* outweighed by any of the listed concerns in Rule 403. *United States v. Peters,* 791 F.2d 1270, 1291 (7th Cir.), *cert. denied,* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986); *United States v. Tuchow,* 768 F.2d 855, 865 (7th Cir.1985); *United States v. Falco,* 727 F.2d 659 (7th Cir.1984).

■ Thus, there is on the balance scale of Rule 403 relevant probative evidence in the form of Jackson's refusal to provide handwriting exemplars. In the absence of the handwriting exemplars, the admission of the evidence of refusal is critical because there appears to be no alternative means of proof with regard to an essential element of the government's case. While prosecutorial need alone does not mean probative value outweighs prejudice, the more essential the evidence, the greater its probative value, and the less likely that a trial court should order the evidence excluded. *United States v. King,* 713 F.2d

627, 631 (11th Cir.1983), *cert. denied,* 466 U.S. 942, 104 S.Ct. 1924, 80 L.Ed.2d 470 (1984). There is an additional factor to be considered with regard to contumacious conduct which occurs in a pending case. That factor relates to the orderly administration of justice. We do not believe that a defendant *who refuses to obey a lawful order* to produce evidence which is not constitutionally protected, may take advantage of that refusal to defeat the prosecution of an underlying charge by his willingness to accept the consequences of a contempt conviction. While we do not favor a *per se* rule of admitting evidence of a defendant's refusal to comply with a lawful court order, a defendant's refusal may provide relevant and probative evidence of knowledge and thus lends substantial weight to the probative value side of the Rule 403 scale.

■ In his analysis, the district judge briefly mentioned unfair prejudice as a factor. Yet examining the potential for undue prejudice, it does not appear that evidence of Jackson's refusal to provide handwriting exemplars is inherently unfairly prejudicial. That fact alone is not likely to produce an improper emotional decision by the jury. Unfair prejudice is not to be equated with testimony simply adverse to the defendant. It is axiomatic that all relevant evidence bearing on the guilt of a defendant is inherently prejudicial. However, the district judge may have been concerned not so much with the unfair prejudicial effect of the *fact* of Jackson's refusal to provide handwriting exemplars, but more with the problem of where the admission of that fact might ultimately lead in the give and take of the trial. It appears that it was the potential for the introduction of evidence related to Jackson's purported defenses for his refusal to provide the exemplars which caused the heightened judicial concern.[12] Judge Sharp gave the following written rationale for granting the motion *in limine:*

12. According to Jackson, "he would have the right to bring into evidence the reasons why he refused and the legal defenses he thought, rightly or wrongly, that he had a right to assert if

they tended to rebut the conclusion the United States wished to draw from his action [of refusing to provide handwriting exemplars]."

[Allowing the evidence to be admitted] would permit the prosecution to start the journey into circumstances involving the defendant's refusal to give handwriting exemplars which might easily and quickly lead into evidentiary areas that are otherwise prohibited. Once the journey is commenced it is often difficult for the best of trial judges to properly control the destiny of that journey.[13]

The district judge then summarized his view that he "does not believe that Rule 404(b) as currently interpreted in this circuit, gives a license to the prosecution in this case to proffer in its case in chief the fact that this defendant refused to give handwriting exemplars." Judge Sharp concluded that under Rule 403 the balance "tilts ever so slightly in favor of the defendant."

 We review challenges to a trial court's ruling excluding evidence under Rule 403 on an abuse of discretion standard. *United States v. Zapata*, 871 F.2d 616, 621 (7th Cir.1989); *United States v. Gentile*, 816 F.2d 1157, 1161 (7th Cir.1987); *Webb v. Chester, Ill.*, 813 F.2d 824, 827 (7th Cir.1987). In this case, the danger of unfair prejudice (or jury confusion of the issues or undue delay) is far too conjectural to be accorded great weight when compared to the nature and type of the evidence excluded. The rationale used by the district court in performing the balancing test between the probative value of Jackson's refusal to give handwriting exemplars and the danger of undue prejudice is inconsistent with the rationale of general admissibility stated in *Huddleston*.[14] In exercising his discretion, the district judge chose a balancing approach in the pretrial exclusion of the evidence which did not properly reflect the standard established by Rule 403—a standard for exclusion of evidence which requires a *substantial* outweighing of the probative value of the relevant evidence by the danger of unfair prej-

udice (jury confusion of the issues or undue delay). This improper balancing constituted an abuse of discretion and the grant of the motion *in limine* excluding the admission of evidence of Jackson's refusal to provide handwriting exemplars must be reversed.

 Although we are mindful of the difficult task of conducting a fair and efficient trial when confronted with evidence admissible under Rule 404(b), we are confident that the extensive experience and trial skills of the district judge will enable him to navigate the evidentiary course we chart today. In this regard, we believe that any danger regarding the jury's improper use of the evidence of Jackson's refusal to submit handwriting exemplars can be minimized by appropriate limiting instructions. *See Huddleston*, 485 U.S. ——, 108 S.Ct. at 1502.

### Conclusion

We affirm Jackson's sentence for his contempt conviction. We reverse the district court's grant of motion *in limine* in favor of the defendant.

---

13. Although not articulated in his findings, the concern about the admission of handwriting exemplars leading to other evidentiary areas may have related more to the Rule 403 factors of jury confusion of the issues or undue delay rather than unfair prejudice.

14. The district judge did not have the benefit of the *Huddleston* case which was decided after his ruling on the motion *in limine*.