Barrett, Circuit Judge, dissenting.
I dissent from the majority opinion for three reasons. First, I disagree that clearly established Supreme Court precedent dictates the resolution of Schmidt's Sixth Amendment claim. The majority says that this ex parte and in camera proceeding was a "critical stage," but the Court's "critical stage" precedent deals exclusively with adversarial confrontations between the defendant and an agent of the State. Second, the majority suggests that even if the presence of an adversary is necessary, the judge played that role. The procedural context and transcript, however, provide ample grounds for a fairminded jurist to conclude otherwise. Finally, I disagree with the majority that the Wisconsin Court of Appeals unreasonably applied federal law in deciding that this proceeding did not risk substantial prejudice to Schmidt. The prejudice alleged is that Schmidt's wandering testimony cluttered the record with irrelevant details that distracted the judge from Schmidt's best evidence. This proceeding, however, supplemented the defense's written offer of proof detailing Schmidt's evidence of adequate provocation. A fairminded jurist could conclude that the written summary of Schmidt's evidence kept the judge from losing the forest for the trees.
I.
Because the Wisconsin Court of Appeals adjudicated Schmidt's Sixth Amendment claim on the merits, the Anti-Terrorism *322 and Effective Death Penalty Act of 1996 (AEDPA) prevents us from granting his application for a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The majority's description of this case as "unprecedented" and "highly unusual" gives away the fact that the opinion enters territory that the Supreme Court has not broached. Existing Supreme Court precedent addresses a defendant's right to counsel in certain adversarial confrontations with a prosecutor, the police, or an agent of either. No Supreme Court precedent addresses the question presented by this case: whether a defendant has the right to counsel when testifying before a judge in a nonadversarial proceeding. Because there is no clearly established Supreme Court precedent for the Wisconsin Court of Appeals to have unreasonably applied, Schmidt cannot satisfy § 2254(d)(1)'s stringent standard for relief.
A.
The majority describes Supreme Court precedent as "clearly stand[ing] for the proposition that" counsel is "required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." Majority Op. at 312 (citing Mempa v. Rhay , 389 U.S. 128, 134, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) ). That states the rule at too high a level of generality. The Court's "critical stage" precedent deals exclusively with a defendant's right to counsel in adversarial confrontations with law enforcement. And the connection between the right to counsel and an adversarial confrontation is by no means a mere side-light in the cases; it is central to them.
The Court has rooted the right to counsel in the need to protect the defendant when he faces the prosecuting authority. In United States v. Ash , it explained that the right emerged alongside the introduction of a "government official whose specific function it was to prosecute, and who was incomparably more familiar than the accused with the problems of procedure, the idiosyncrasies of juries, and, last but not least, the personnel of the court." 413 U.S. 300, 308, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) (citing F. Heller, The Sixth Amendment 20-21 (1951) ). Consistent with this history, the Sixth Amendment was designed "to minimize imbalance in the adversary system that otherwise resulted with the creation of a professional prosecuting official." Id. at 309, 93 S.Ct. 2568. While the Amendment's protection is not limited to the formal trial, "[t]he Court consistently has applied a historical interpretation of the guarantee, and has expanded the constitutional right to counsel only when new contexts appear presenting the same dangers that gave birth initially to the right itself." Id. at 311, 93 S.Ct. 2568.
The "new contexts" to which the Court has extended the right invariably involve a confrontation between the defendant and his adversary, be it a prosecutor, the police, or one of their agents. For example, in Estelle v. Smith , a psychiatrist functioning as an "agent of the State" performed an examination of the defendant in his jail cell. 451 U.S. 454, 467, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981).[1] In *323 Coleman v. Alabama , the defendant attended a preliminary hearing at which there was an opportunity to cross-examine the prosecution's witnesses, preview the prosecutor's case to better prepare for trial, and argue for matters such as "the necessity for an early psychiatric examination or bail." 399 U.S. 1, 9, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (plurality opinion). In United States v. Wade , an FBI agent conducted a lineup of Wade and several other prisoners. 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In Mempa v. Rhay , the defendant was summoned to a hearing at which the prosecutor sought to have his probation revoked and a sentence imposed. 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). In Massiah v. United States , federal agents sent an informant wearing a wire to elicit incriminating testimony from the defendant after he had already been indicted. 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In Escobedo v. Illinois , the police interrogated the defendant without counsel despite his repeated requests that counsel be present. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In White v. Maryland , the prosecutor presented a prima facie case against the defendant at a preliminary hearing, where the defendant pleaded guilty. 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) (per curiam).[2] In Hamilton v. Alabama , the defendant faced the prosecutor at arraignment, which was his only opportunity to plead insanity, make pleas in abatement, and move to quash the indictment based on racial discrimination in the composition of the grand jury. 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). Although these confrontations occurred outside the context of the formal trial, the Sixth Amendment applied because they "offered opportunities for prosecuting authorities to take advantage of the accused," or the risk that the accused "might be misled by his lack of familiarity with the law." Ash , 413 U.S. at 312, 317, 93 S.Ct. 2568.[3] *324 Ash includes a line that is susceptible to misinterpretation. There, the Court said that a stage is critical when "the accused was confronted, just as at trial, by the procedural system, or by his expert adversary, or by both." Id . at 310, 93 S.Ct. 2568. This language could be understood as setting up alternative settings-one non-adversarial and the other adversarial-in which the right to counsel applies. In context, however, it is evident that the Court was explaining why it has extended the right of counsel not only to situations in which the defendant or his witness is questioned by the police or prosecutor (as in post-indictment interrogation of the accused or examination at trial), but also to situations in which the prosecutor puts the accused to a procedural choice (like entering a plea or raising a defense). In other words, Ash describes two kinds of risks that an accused might face in an adversarial setting. It does not describe the right to counsel as extending outside of an adversarial proceeding, and the Court has not understood it that way.
To the contrary, the Court has never extended the right outside of the adversarial context. And when it has refused to extend the right, it has done so on the ground that the proceeding was not adversarial. Ash refused to extend the right of counsel to a post-indictment photographic display precisely because the display involved no confrontation between the accused and the prosecuting authority. 413 U.S. at 315, 321, 93 S.Ct. 2568. Similarly, in Gerstein v. Pugh , the Court held that a probable cause hearing is not a critical stage "[b]ecause of its limited function and its nonadversary character." 420 U.S. 103, 122, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). We too have recognized the presence of an adversary as a necessary factor for Sixth Amendment protection. In United States v. Jackson , 886 F.2d 838, 844 (7th Cir. 1989), for example, we held that a defendant's uncounseled interview with a probation officer in the course of the officer's preparation of the presentence report was not a critical stage precisely because the "probation officer does not have an adversarial role in the sentencing proceedings." Rather than serving as an arm of the prosecutor, "the probation officer serves as a neutral information gatherer for the sentencing judge." Id.
B.
The majority acknowledges that the Court has never addressed a claim like Schmidt's. But it points out that a case *325 need not present facts identical to those previously considered by the Court for clearly established precedent to govern it. The Court has said that a state court acts unreasonably for purposes of § 2254(d)(1) if it "refuses to extend [controlling Supreme Court precedent] to a new context where it should apply." Williams v. Taylor , 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The majority reasons that the Wisconsin trial court's questioning of Schmidt is such a context-not one that the Court has confronted before, but one to which its "critical stage" precedent clearly extends.
This reasoning only works, however, if the controlling precedent is read at the level of generality the majority proposes-as establishing the right to counsel in any post-indictment proceeding in which legal assistance would help the accused avoid substantial prejudice. If that is the law, then we need to decide whether the state court unreasonably refused to apply it to this new context. But if the precedent is read more narrowly-as establishing the right to counsel when the accused faces his adversary-then clearly established law does not dictate the outcome. Resolving the Sixth Amendment question therefore requires us to decide the level of generality at which to read the Supreme Court's precedent.
Carey v. Musladin answers that question: we track the level of generality at which the Court has spoken. 549 U.S. 70, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006). In Carey , the Court reviewed the Ninth Circuit's determination that buttons with the victim's image worn by courtroom spectators had deprived the habeas petitioner of a fair trial. The Court had previously held that certain state-sponsored practices (like compelling a defendant to wear prison clothing at trial) were "inherently prejudicial," and the Ninth Circuit reasoned that the buttons posed a similar risk. The Court rejected that reasoning. The Ninth Circuit interpreted the Court's precedent as establishing a general rule against courtroom conduct inherently prejudicial to the defendant; it should have interpreted the Court's precedent as establishing a more specific rule against state-sponsored courtroom conduct inherently prejudicial to the defendant. Id. at 76, 127 S.Ct. 649. The Court emphasized that it "ha[d] never addressed a claim that such private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial." Id . By stating the rule more broadly than the Court had, the Ninth Circuit held the state responsible for violating law that was not clearly established.
So here. The Court has never addressed a claim that a defendant has a right to counsel in an ex parte and in camera proceeding before a judge. Like the Ninth Circuit in Carey , the majority errs by stating the established law at a higher level of generality than the Court has. Indeed, the centrality of adversarial confrontation to the Court's "critical stage" jurisprudence makes the extraction of a general principle from a more specific rule even more evident here than it was in Carey .
To be clear, Carey is not inconsistent with the Court's admonition in Williams v. Taylor that a state court acts unreasonably if it "refuses to extend [controlling Supreme Court precedent] to a new context where it should apply." 529 U.S. at 407, 120 S.Ct. 1495. A state court cannot treat the Court's clearly established precedent as fact-bound. On the contrary, a state court, like a reviewing federal court, must respect the level of generality at which the Court has spoken. Just as a federal court cannot elevate the level of generality, a state court cannot contract it. Thus, a state court would act unreasonably if it refused to recognize a defendant's *326 right to counsel in a post-indictment, adversarial proceeding on the ground that the proceeding was not exactly the same as those the Court has previously addressed. Clearly established law does not entitle the defendant to counsel in a laundry list of specific proceedings, but in "proceedings between an individual and agents of the State ... that amount to 'trial-like confrontations,' at which counsel would help the accused 'in coping with legal problems or ... meeting his adversary.' " Rothgery v. Gillespie County , 554 U.S. 191, 212 n.16, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008) (citations omitted). The state court is obliged to follow that rule, even if the factual circumstance is new. But under AEDPA, we cannot hold the state court accountable for declining to expand the rule itself.
Perhaps the right to counsel should extend to a hearing like the one the judge conducted in Schmidt's case. But AEDPA precludes us from disturbing a state court's judgment on the ground that a state court decided an open question differently than we would-or, for that matter, differently than we think the Court would. Because the Court has never addressed the question that the Wisconsin Court of Appeals faced, there was no clearly established precedent for it to flout.
II.
The majority does not rely exclusively on an extension of the Court's "critical stage" cases to nonadversarial proceedings. Its opinion appears to rest on a second rationale: that this proceeding was functionally adversarial. While it stops short of actually calling the judge the defendant's "adversary," it strongly implies that the judge stood in the shoes of the prosecutor. The majority's reasoning, then, seems to be twofold. Clearly established Supreme Court precedent is not limited to adversarial proceedings, but in any event, this proceeding was functionally adversarial and risked substantial prejudice to Schmidt. In concluding otherwise, the Wisconsin Court of Appeals unreasonably applied clearly established federal law.
The majority gives too little deference to the Wisconsin Court of Appeals. A state-court decision is "unreasonable" under § 2254(d) if it is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton , --- U.S. ----, 136 S.Ct. 1149, 1151, 194 L.Ed.2d 333 (2016) (per curiam) (citation and quotation marks omitted); see also Harrington v. Richter , 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) ( Section 2254(d)"preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents."). That is a high bar, and Schmidt does not clear it.
A.
The majority holds that the Wisconsin Court of Appeals unreasonably applied the Court's "critical stage" jurisprudence when it concluded that the ex parte and in camera proceeding was nonadversarial. Given the prosecutor's absence, it was certainly not "adversarial" in the ordinary sense of the word-or in the sense that the Court has employed it in the cases. In an effort to get around that, the majority characterizes the proceeding as "inquisitorial." If used in its benign sense-as referring to the system of proof-taking in civil law systems-the word "inquisitorial" by definition means nonadversarial. See Majority Op. at 311 n.3. At some points in its opinion, the majority concedes that the proceeding was nonadversarial and faults it on that ground. See , e.g. , *327 Majority Op. at 311. (That concession, of course, forecloses the argument that the Wisconsin Court of Appeals unreasonably characterized the ex parte and in camera hearing as a nonadversarial one.) Elsewhere, however, the majority asserts that the proceeding was adversarial. Majority Op. at 315-16. This suggests that the majority is using the description "inquisitorial" as it is often deployed in American criminal cases-to describe a proceeding in which the accused faces an aggressive questioner gathering evidence against him. See , e.g ., Miller v. Fenton , 474 U.S. 104, 110, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) ; Miranda v. Arizona , 384 U.S. 436, 442-43, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). And while the majority does not attribute ill will to the judge, it does cast him as Schmidt's adversary. Majority Op. at 315-16 (asserting that the hearing was a "trial-like confrontation" in which "the judge took the accused and his (silenced) lawyer into chambers to question him about the facts supporting the defense").
The transcript, however, contains no suggestion that the judge ever functioned as a surrogate prosecutor. His aim was not to secure Schmidt's conviction-or, as specifically relevant here, to establish that Schmidt was not entitled to raise the "adequate provocation" defense. On the contrary, as the Wisconsin Court of Appeals observed, the judge conducted the proceeding this way for Schmidt's benefit.
The hearing grew out of a dispute between the parties about when the trial court would decide whether Schmidt had sufficient evidence to put the "adequate provocation" defense in issue. Schmidt argued that Wisconsin law required the court to wait to resolve that question until it instructed the jury; doing it before trial, he insisted, would give the prosecution a preview of his case. The State wanted the court to rule on the admissibility of Schmidt's evidence before trial; otherwise, it argued, the jury would hear a litany of prejudicial evidence about the victim that might not be probative of an issue actually in the case. The court agreed with the State. It decided-in a ruling that the Wisconsin Court of Appeals ultimately affirmed-that Wisconsin law gave the trial court the discretion to determine before trial whether the defendant could carry his burden of production on the "adequate provocation" defense.
While the judge decided to make the evidentiary determination before trial, he was sympathetic to Schmidt's concern about showing the prosecutor his hand. He proposed the ex parte and in camera hearing as a way of addressing that concern. Defense counsel responded as follows to the court's proposal:
A suggestion that I was going to bring up today is that the Court, if you are going to ask for evidence from the defendant or evidence that goes to his subjective belief for adequate provocation, is that, in fact, we would do an ex parte in-camera inspection of the Court and the defendant and seal those records because I don't think it would be-it should be allowed to the State and should have that information prior to trial.
Transcript of Motion Hearing 2.10.2010 at 5. The court wanted defense counsel to accompany Schmidt, but because the prosecution was barred from the hearing, the court instructed defense counsel to function as an observer only. The prosecutor agreed to the proceeding on that condition. Had Schmidt's counsel actively participated, the judge would have included the prosecutor, and Schmidt wanted the prosecutor out of the room.
The majority puts little weight on the prosecutor's absence, because it suggests that the judge filled the prosecutor's *328 shoes.[4] The judge, however, spoke very little during the hearing. Instead, he primarily listened as Schmidt testified about his state of mind before he shot his wife.[5] And far from positioning himself as Schmidt's adversary, the judge tried to help him by calling a recess so that Schmidt could review the written offer of proof with his counsel.[6] The offer of proof was a roadmap for Schmidt's testimony. It contained a timeline of the allegedly provocative events, and the judge wanted Schmidt to refresh his memory so that he didn't overlook any. Before the recess, he told Schmidt "that you might not state all of the things that are in the offer of proof, possibly because you ... haven't had an opportunity to review this." Transcript of Proceedings at 25. When the hearing resumed, the judge asked Schmidt how the incidents described in the document might have affected his state of mind.
In retrospect, it may have been better for the judge to decline Schmidt's request for an ex parte and in camera hearing. There would be no Sixth Amendment question before us if the judge had proceeded in the normal course, with both lawyers participating. That said, the judge structured the hearing as he did in an effort to accommodate Schmidt, and the transcript reflects that the judge remained neutral throughout it. It was therefore reasonable for the Wisconsin Court of Appeals to conclude that this was not a trial-like confrontation in which Schmidt was entitled to counsel to "compensate[ ] for advantages of the prosecuting authorities." Ash , 413 U.S. at 314, 93 S.Ct. 2568.
B.
It is not enough for Schmidt to demonstrate that the Wisconsin Court of Appeals unreasonably concluded that this proceeding was nonadversarial. To secure relief, Schmidt must also show that no fairminded judge could conclude that this hearing lacked the potential to substantially prejudice him. That is yet another ground on which Schmidt's argument fails.
According to the majority, "The prejudice [Schmidt] suffered came from disclosing irrelevant details and diluting the evidence that could support his defense." Majority Op. at 320. In other words, Schmidt was harmed because his rambling narrative failed to focus the judge on the evidence most helpful to his "adequate provocation" defense. The idea that the judge-who knew the legal elements of *329 the adequate provocation defense-was incapable of separating the wheat from the chaff sells the judge short.[7] But in any event, the judge was not left to cull the evidence without input from defense counsel. As the Wisconsin Court of Appeals said, the examination of Schmidt was supplementary. The judge went into it already having reviewed a legal analysis of the adequate provocation defense; a detailed timeline of the relevant events; the summarized testimony of 29 witnesses who observed his wife's allegedly provocative behavior; a hotel reservation that Schmidt discovered shortly before the shooting and took as evidence of his wife's infidelity; and a copy of a statement that Schmidt gave police at the scene that detailed some of what was in his mind when he shot his wife. So even if Schmidt's testimony cluttered the record with irrelevant details, the written evidence focused the judge on the key facts.
The Wisconsin Court of Appeals acknowledged that it might have been more efficient to have counsel guide the presentation of Schmidt's testimony. But the fact that the participation of counsel would have been helpful to Schmidt does not necessarily mean that the lack of counsel risked substantial prejudice to him. A fairminded jurist could find that this proceeding, which was reinforced by written evidence, did not risk substantial unfair prejudice to Schmidt.
III.
Because the majority holds that Schmidt is entitled to relief on his Sixth Amendment claim, it does not reach Schmidt's claim that the ex parte and in camera hearing arbitrarily violated his due process right to present a defense. For the sake of completeness, I briefly note that I would deny relief on this claim as well.
In both the Wisconsin Court of Appeals and the federal district court, Schmidt asserted a claim under Chambers v. Mississippi , which holds that state evidentiary rules must yield to the defendant's due-process right to present a defense. 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). According to Schmidt, Wisconsin violated the Due Process Clause by requiring him to satisfy a burden of production (that he produce "some evidence" of adequate provocation) before he could introduce evidence of that defense at trial. Both the Wisconsin Court of Appeals and the federal district court correctly rejected that claim, because, among other things, none of the cases in which the Chambers principle has prevailed (and it has prevailed only rarely) "involved restrictions imposed on a defendant's ability to present an affirmative defense." Gilmore v. Taylor , 508 U.S. 333, 343, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993) ; see also Kubsch v. Neal , 838 F.3d 845, 858 (7th Cir. 2016) (en banc) (discussing Chambers and its progeny). Adequate provocation in Wisconsin is an affirmative defense. Wis. Stat. § 939.44(2).
*330 Presumably recognizing the weakness of his Chambers claim, Schmidt has repackaged his due process argument into a new claim. Before us, he argues not that Wisconsin's evidentiary rules must yield to his due process right to put on a defense, but that the trial court's use of the ex parte and in camera process violated the Due Process Clause. Because Schmidt did not raise this claim in either the Wisconsin Court of Appeals or the federal district court, I would deny it as both procedurally defaulted and forfeited.
* * *
The standard for relief under AEDPA is intentionally difficult because federal habeas review of state convictions "frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." Calderon v. Thompson , 523 U.S. 538, 555-56, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) (citation and quotation marks omitted). To reinforce that point, the Court has not hesitated to reverse the courts of appeals when they fail to give state courts the deference that AEDPA requires. See, e.g. , Woods , --- U.S. ----, 136 S.Ct. 1149 ; Woods v. Donald , --- U.S. ----, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015) (per curiam); White v. Wheeler , --- U.S. ----, 136 S.Ct. 456, 193 L.Ed.2d 384 (2015) (per curiam); Marshall v. Rodgers , 569 U.S. 58, 133 S.Ct. 1446, 185 L.Ed.2d 540 (2013) (per curiam); Nevada v. Jackson , 569 U.S. 505, 133 S.Ct. 1990, 186 L.Ed.2d 62 (2013) (per curiam); Parker v. Matthews , 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012) (per curiam); Renico v. Lett , 559 U.S. 766, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010). The majority fails to give the Wisconsin Court of Appeals the required deference, and I therefore dissent.

The majority characterizes Estelle as a case in which the Court recognized the right to counsel in a non-adversarial proceeding. Majority Op. at 313-14. In Estelle , the judge had "informally ordered the State's attorney to arrange a psychiatric examination of [the defendant] ... to determine [his] competency to stand trial,"451 U.S. at 456-57, 101 S.Ct. 1866, and the majority asserts that the Court held that "the judge's non-adversarial decision to order the psychiatric interview ... was a critical stage of the proceedings." Majority Op. at 313. But it was the examination by the psychiatrist, not the decision by the judge, that the Court deemed a "critical stage." 451 U.S. at 470, 101 S.Ct. 1866 ("[R]espondent's Sixth Amendment right to counsel clearly had attached when Dr. Grigson examined him at the Dallas County Jail, and their interview proved to be a 'critical stage' of the aggregate proceedings against the respondent." (footnote omitted) ). And the Court left no doubt that the psychiatrist functioned as the defendant's adversary. It stressed that the defendant was "faced with a phase of the adversary system" and was "not in the presence of [a] perso[n] acting solely in his interest." Id. at 467, 101 S.Ct. 1866 (citations omitted). The psychiatrist assessed the defendant's "future dangerousness," gathering evidence that the prosecution used in seeking the death penalty, id. at 467, 471, 101 S.Ct. 1866, and he then testified against the defendant at trial, "recounting unwarned statements made in a postarrest custodial setting." Id . at 467, 101 S.Ct. 1866. Given the stakes of submitting to such an interview, the Court held that the defendant had the right to counsel's help in deciding whether to do it. Id. at 470, 101 S.Ct. 1866.

The brief per curiam opinion is short on details, but the petitioner's brief explains that at a preliminary hearing in Maryland, "the defendant may be called upon by the magistrate to plead guilty or not guilty, and a plea of guilty is admissible evidence at the subsequent trial of his case. Here, also, the defendant is afforded the first opportunity to be informed of the charges against him, cross-examine State's witnesses, and begin to effectively prepare his defense ... [The magistrate's] sole function at this hearing is to determine from the evidence presented by the State's attorney whether to hold the accused for the action of the Grand Jury ... or discharge him." Petitioner's Brief at 4, 6.

The majority relies on Geders v. United States , 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), as support for the proposition that a proceeding need not be adversarial for the right to counsel to apply. See Majority Op. at 313-14. Geders -which is not a "critical stage" case-is inapposite. In Geders , the Court held that the trial court violated the defendant's Sixth Amendment right when it instructed all witnesses, including the defendant, not to discuss the case with anyone during an overnight recess in the trial. The case did not present the question whether a particular event (there, the overnight recess) is a "critical stage" at which the state must ensure that the defendant is either accompanied by counsel or waives his right to be accompanied by counsel. It presented the different question whether a trial court can prevent the defendant from consulting counsel on his own initiative outside of the trial. Id. at 88, 96 S.Ct. 1330. Geders says nothing about the characteristics of a "critical stage," much less suggests that such a stage need not be adversarial. Nor does Geders stand for the proposition that the start of the adversarial process-or even the start of trial-marks the beginning of a continuous "critical stage." On the contrary, the Court has indicated that a trial may encompass stages that are not critical. See , e.g. , Woods v. Donald , --- U.S. ----, 135 S.Ct. 1372, 1377-78, 191 L.Ed.2d 464 (2015) (per curiam) (reversing the Sixth Circuit's grant of habeas relief to a petitioner whose counsel was absent during trial testimony about the petitioner's co-defendants because the Court had never held that the presentation of testimony tangentially related to the defendant was a "critical stage").

The majority also suggests that the ex parte and in camera proceeding followed on the heels of the prosecutor's oral argument about why Schmidt's evidence fell short of what was necessary to carry his burden of production. Majority Op. at 314-15. But the judge did not hear arguments about the substance of the adequate provocation issue from either side before he examined Schmidt. He "entertain[ed] comments from counsel" on the procedural questions of whether he could resolve the burden-of-production question before trial and whether he could do an in camera inspection of Schmidt. Transcript of Motion Hearing 2.10.2010 at 2-7. The rest of the hearing dealt with various trial-management matters. At no point did the prosecutor make an argument about why Schmidt's evidence of adequate provocation was insufficient.

Schmidt, who testified voluntarily, does not argue that the court violated his Fifth Amendment right against self-incrimination. As the trial court noted "[the pretrial hearing] accelerates what the defendant might already say in a trial, but it is the defendant that chooses to present this defense." Transcript of Motion Hearing 2.10.2010 at 4.

During this recess, the judge permitted defense counsel to confer with Schmidt while the judge stepped out to make a phone call. Defense counsel asked: "Am I allowed to talk to my client now or not?" The judge responded: "It's off the record. Yeah, you can talk. But he should just be reviewing [the offer of proof]." Transcript of Proceedings at 26.

The majority also sells the trial judge short with its argument that by saying too much, Schmidt risked confusing the judge about whether he was supposed to resolve the merits or decide whether Schmidt had carried his burden of production on the defense. Majority Op. at 316-17. This argument not only underrates the judge (and the court of appeals that affirmed his judgment), but it also rests on an assumption that is odd given the facts of this case: that Schmidt should have been sparing in his testimony to avoid "convert[ing] the hearing into a mini-trial on the merits of his defense rather than a debate about the burden of production." Id . at 317. As it was, both the Wisconsin trial and appellate courts found that Schmidt had not introduced enough evidence to get the defense before the jury. Given that his evidence was thin enough to permit that finding, he would have been ill advised to hold back any evidence from the judge.