**UNITED STATES of America**

v.

**FRIERSON, Jerome, Appellant.**

No. 90–3382.

United States Court of Appeals, Third Circuit.

Argued Nov. 15, 1990.

Decided Oct. 1, 1991.

Raymond M. Radulski (argued), Wilmington, Del., for appellant.

William C. Carpenter, Jr., U.S. Atty., Edmond Falgowski (argued), Asst. U.S. Atty., Wilmington, Del., for appellee.

Before STAPLETON, HUTCHINSON, and GARTH, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Jerome Frierson appeals from a judgment of sentence imposed after he pled guilty to bank robbery by intimidation in violation of 18 U.S.C. § 2113(a). Frierson raises two important issues concerning application of the Sentencing Guidelines. First, we must determine whether conduct that is "relevant" to the offense of conviction, and is charged in the indictment but dropped pursuant to a plea agreement, may be used by the sentencing judge in adjusting the offense level for a specific offense characteristic. Second, we must address certain aspects of the interplay between the Fifth Amendment privilege against self-incrimination and § 3E1.1 of the Guidelines, which authorizes a two-level sentence reduction for acceptance of responsibility. We will affirm the judgment of sentence.

### I.

Frierson was indicted in January 1990 for a robbery committed on December 22, 1989. Count I of the indictment charged Frierson with robbing a bank by intimidation in violation of 18 U.S.C. § 2113(a). Count II charged bank robbery with a dangerous weapon in violation of 18 U.S.C. § 2113(a), (d). Count III charged interstate transportation of a stolen car in violation of 18 U.S.C. § 2312. On February 22, 1990, pursuant to a plea agreement, the government dismissed with prejudice Counts II and III in exchange for Frierson's plea of guilty to Count I.

■ The Guidelines impose a base offense level for particular criminal offenses and provide for an increase or decrease from the base offense level for certain "specific offense characteristics" associated with the offenses. The base offense level for robbery is 20, and two levels must be added when a bank's property was the target of the robbery. The sentencing judge also must impose a three-level increase if "a dangerous weapon (including a firearm) was brandished, displayed, or possessed." U.S.S.G. § 2B3.1. Specific offense characteristics such as possession of a gun must be proved by a preponderance of the evidence. *United States v. Kikumura,* 918 F.2d 1084, 1099 (3d Cir.1990) (Guidelines sentencing determinations normally determined by preponderance of evidence); *United States v. McDowell,* 888 F.2d 285, 290–91 (3d Cir.1989) (same); *see generally McMillan v. Pennsylvania,* 477 U.S. 79, 91–93, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1986) (preponderance of evidence standard for sentencing determinations satisfies due process).

■ In determining whether a specific offense characteristic applies, the sentencing judge is not constrained to look only at the specific conduct that constitutes the offense of conviction. Instead, with few exceptions, the judge generally *must* consider all "relevant conduct" under § 1B1.3 of the Guidelines.

> Unless otherwise specified, ... specific offense characteristics ... *shall be determined* on the basis of ... all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, ... or that otherwise were in furtherance of that offense.

U.S.S.G. § 1B1.3(a) (emphasis added). For certain crimes, not including robbery, relevant conduct also includes all acts and omissions that were "part of the same course of conduct or common scheme or

plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).

After the district judge accepted the plea agreement between Frierson and the government, a probation officer interviewed Frierson in May 1990 in order to prepare the presentence report required by the Guidelines. *See* U.S.S.G. § 6A1.1 p.s. At the presentence interview, Frierson admitted that he had committed the robbery and that during the robbery he had handed the teller a note that said: "Give me your money, I have a gun." Thus, Frierson admitted all conduct for which he had been convicted. Frierson and the government disagreed, however, over whether Frierson actually possessed a gun. Frierson, repeating what he had stated to an FBI agent in an interview on January 8, 1990, denied that he had possessed a gun during the bank robbery. The government contested this account and provided statements by a bank teller that Frierson had possessed and brandished a gun during the robbery.

The probation officer assigned Frierson a base offense level of 20 for robbery and added two levels because a bank was robbed. The base offense level and this initial increase are undisputed. With the offense level set at 22, the probation officer had to determine whether to recommend enhancement of the sentence by three levels for possession of a gun. The probation officer also had to decide whether to recommend a two-level reduction for acceptance of responsibility available under § 3E1.1 of the Guidelines. The lowest offense level Frierson could receive was 20 (if he received the two-level reduction for acceptance of responsibility but not the three-level enhancement for gun possession). Absent departure, an offense level of 20 and Frierson's criminal history category of II would require a sentence between 37 and 46 months. The highest level Frierson could receive was 25, which, absent departure, would mandate a sentence between 63 and 78 months.

The probation officer concluded that Frierson had possessed a gun during the robbery. He thus recommended enhancing the base offense level by three levels for possession of a gun pursuant to § 2B3.1 of the Guidelines. Moreover, the probation officer concluded that, although Frierson had admitted committing the bank robbery, Frierson had not demonstrated a recognition or affirmative acceptance of responsibility for possession of the gun. Consequently, the probation officer recommended denying the two-level reduction for acceptance of responsibility. Thus, the total recommended offense level was 25.

In view of the conflict over whether Frierson possessed a gun, the district judge conducted an evidentiary hearing. At the hearing, the bank teller testified that Frierson held a gun throughout the robbery. Frierson did not testify, but Frierson's counsel agreed with the government that if Frierson were to testify, he "would testify that he had no gun." App. at 12. The district court found that Frierson had possessed a weapon during the commission of the robbery, and that Frierson's possession of the weapon required the three-level increase in Frierson's offense level under § 2B3.1. The court also concluded that the probation officer was correct in denying Frierson a two-level reduction for acceptance of responsibility. Thus, the total offense level was 25, and the district court sentenced Frierson to 78 months imprisonment.

## II.

The first issue is whether the district court properly imposed a three-level increase in the offense level for gun possession. Frierson's argument concerns interpretation and application of the Guidelines; he does not raise a constitutional challenge on this point. Our review is plenary. *United States v. Ofchinick,* 877 F.2d 251, 255 (3d Cir.1989).

The Guidelines are clear that conduct beyond the precise acts of the offense of conviction may be used to determine specific offense characteristics. *See* U.S.S.G. § 1B1.3. This court and other courts of appeals have adhered to this prescription, upholding sentences based in part on conduct for which the defendant was not con-

victed. *See United States v. Cianscewski,* 894 F.2d 74, 80–81 (3d Cir.1990); *United States v. Ryan,* 866 F.2d 604, 608–09 (3d Cir.1989); *see also* Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 502 (1990). The use of relevant conduct in determining specific offense characteristics complies with the Sentencing Commission's intent to inject certain "real offense" elements into the Guidelines, which have created a mostly "charge offense" system. U.S.S.G., Ch. 1, Pt. A, intro. comment; *see also* Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest,* 17 Hofstra L.Rev. 1, 11–12 (1988). In this case, Frierson's gun possession during the robbery falls well within the scope of conduct relevant to his robbery of the bank; therefore, the Guidelines required the court to enhance the sentence for the specific offense characteristic of gun possession.

■ Our review of the three-level increase for gun possession is not at an end, however, for Frierson argues that taking relevant conduct into account in this case would render his plea agreement with the government an "empty" bargain. Frierson pled guilty only to *unarmed* bank robbery and the government dismissed the *armed* robbery count; based on this, Frierson argues that the district court should not have imposed the three-level enhancement for the specific offense characteristic of gun possession. Frierson argues that his expectation in entering the plea agreement was that the government would not pursue a sentence grounded in the bargained-away count, and that this advantage was the only one he gained from his guilty plea, apart from an enhanced possibility of a reduction for acceptance of responsibility.

In the leading case on the issue, the Court of Appeals for the Eleventh Circuit held that conduct relevant to the offense of conviction must be considered in determining a specific offense characteristic, even if that conduct overlaps with conduct charged and dismissed pursuant to a plea agreement. *United States v. Scroggins,* 880 F.2d 1204, 1212–14 (11th Cir.1989). In

*Scroggins,* the defendant pled guilty to one theft of a little more than $100, which under § 2B1.1 of the Guidelines would require an enhancement of one level over the base offense level of four for theft. However, the sentencing judge enhanced the sentence by five levels to reflect other thefts committed by the defendant; these other thefts were "relevant conduct" because they were part of the same course of conduct as the one theft. *See* U.S.S.G. § 1B1.3(a)(2). The indictment had charged the defendant with the other thefts, but these counts were dismissed pursuant to the plea agreement. The defendant argued that consideration of his previous thefts through § 2B1.1 rendered his plea bargain empty. The court agreed that the defendant had nothing to gain from his plea agreement because his sentence would have been the same had he gone to trial and been convicted on all of the counts; nonetheless, it held that the district court's reliance on the defendant's other thefts was mandated by the Guidelines and was neither "unfair nor inequitable." *Id.* at 1214. "The guidelines clearly indicate that such conduct is relevant to sentencing; thus, appellant by no means received a sentence that he could not have anticipated—to the contrary, appellant could have predicted that the court would so act." *Id.*

We agree with the Eleventh Circuit's decision in *Scroggins.* The Guidelines *require* consideration of conduct relevant to the offense of conviction in determining specific offense characteristics. In a robbery case, the Guidelines clearly contemplate the defendant's use of a gun as a basis for sentence enhancement. *See* U.S.S.G. § 2B3.1. Furthermore, in this case, the government provided Frierson, before he pled guilty, with a copy of a Delaware federal district court case in which the court enhanced a sentence for robbery on the basis of gun possession. The government thus alerted Frierson to the possibility that the court would enhance his sentence on that basis. Therefore, if Frierson expected that the sentencing judge could not rely on his possession of a gun to enhance his sentence, that belief was unfounded and unreasonable, in light

both of the Guidelines and of the government's commendable disclosure. We also point out that, unlike the situation in *Scroggins,* Frierson's bargain was not completely empty, since the count of the indictment related to car theft was also dismissed as part of the plea bargain but did not play any role in the sentence calculation.[1]

Because we reject Frierson's legal challenges to the three-level increase for possession of a gun and Frierson raises no challenge to the district court's factual conclusion that Frierson displayed a gun during the commission of the bank robbery, we will affirm the district court's three-level enhancement of Frierson's sentence for possession of a gun.

### III.

Section 3E1.1 of the Guidelines provides a two-level reduction for a defendant who "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Frierson raises two arguments concerning § 3E1.1. The first argument is one of interpretation. Frierson argues that § 3E1.1 requires a defendant to accept responsibility only for the specific acts of the offense of conviction, and not for acts beyond the offense of conviction. The second argument is constitutional. Frierson argues that § 3E1.1 would violate the Fifth Amendment's prohibition against compelled self-incrimination if it required that a defendant admit to conduct beyond the specific conduct of the offense of conviction.

### A.

■ The probation officer recommended withholding the two-level acceptance of responsibility reduction because Frierson denied possessing a gun during the robbery.

The district court agreed and stated: "The Court finds that the Probation Staff was warranted ... in refusing to grant a two-level reduction for the acceptance of responsibility." App. at 37. Frierson argues that he admitted robbing the bank, which was his specific offense of conviction, and that § 3E1.1 requires the district court to consider only whether the defendant has accepted responsibility for the specific acts constituting the offense of conviction. Although "a district court's finding that a defendant did not accept responsibility may be reversed only if 'clearly erroneous.'" *United States v. Singh,* 923 F.2d 1039, 1043 (3d Cir.1991), the question whether the district court correctly interpreted § 3E1.1 is purely legal. Our review is thus plenary.

Section 3E1.1 in its original form required a defendant's acceptance of responsibility for "the offense of conviction," but the Sentencing Commission amended the provision effective January 1988 to refer to acceptance of responsibility for the defendant's "criminal conduct." U.S.S.G.App. C. 20. In determining whether the defendant has accepted responsibility for his or her criminal conduct, appropriate considerations include whether there has been a "voluntary and truthful admission to authorities of involvement in *the offense and related conduct.*" U.S.S.G. § 3E1.1, comment. (n. 1) (emphasis added).

The courts of appeals differ on the scope of § 3E1.1. Some hold that § 3E1.1 refers only to acceptance of responsibility for the offense of conviction. *United States v. Perez–Franco,* 873 F.2d 455, 458–59 (1st Cir.1989); *United States v. Oliveras,* 905 F.2d 623, 628–32 (2d Cir.1990). These courts are strongly influenced by a concern that a broader construction of § 3E1.1 would put that section in conflict with the

---

**1.** The Courts of Appeals for the Second and Tenth Circuits have rejected a similar but more substantial argument than the one here raised by Frierson. *See United States v. Kim,* 896 F.2d 678, 684 (2d Cir.1990); *United States v. Zamarripa,* 905 F.2d 337, 341 (10th Cir.1990). In those cases, the courts held that the sentencing judge may *depart* upward from the Guidelines range on the basis of relevant conduct that was covered in counts dismissed pursuant to a plea agreement. The Court of Appeals for the Ninth Circuit rejected those decisions in *United States v. Castro–Cervantes,* 927 F.2d 1079, 1081–82 (9th Cir.1990). Because they involve a departure, these cases raise a different and more difficult question than the one presented here, and we leave it open.

Fifth Amendment. Other courts of appeals reject this interpretation of § 3E1.1, holding that § 3E1.1 now refers to acceptance of responsibility for the offense of conviction and all relevant criminal conduct. *United States v. Mourning*, 914 F.2d 699, 705–06 (5th Cir.1990); *United States v. Gordon*, 895 F.2d 932, 936–37 (4th Cir. 1990). In so holding, these courts find that the Commission intended with its 1988 amendment to § 3E1.1 to broaden the scope of conduct for which a defendant must accept responsibility to include conduct beyond the specific conduct of the offense of conviction. The courts taking this approach also rely on the note accompanying § 3E1.1, which states that appropriate considerations include admission of "involvement in the offense and related conduct." U.S.S.G. § 3E1.1, comment. (n. 1). For these courts, this application note indicates that the defendant must admit to conduct beyond the specific conduct of the offense of conviction.

■ We agree with the courts that interpret § 3E1.1's reference to "criminal conduct" and the application note's reference to "offense and related conduct" as indicating that the sentencing court may consider whether the defendant has admitted or denied conduct beyond the specific conduct of the offense of conviction in the course of determining whether to grant a two-level reduction for acceptance of responsibility. While we acknowledge that this interpretation presents difficult issues under the Fifth Amendment, we think the intent of the Commission is too clear to ignore; in our view, this is not a situation in which we are free to choose one plausible reading over an equally plausible one in order to avoid a constitutional issue. *See DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988). Accordingly, we here hold that the terms "criminal conduct" and "offense and related conduct" in Chapter 3 refer to the same bundle of conduct: all conduct

that is "relevant" under § 1B1.3 of the Guidelines.

### B.

■ The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. v. The privilege is, however, "much broader than those words would suggest." W. Lafave & J. Israel, *Criminal Procedure* § 23.4, at 883 (1985). The Fifth Amendment has two distinct aspects. First, the Fifth Amendment authorizes a criminal defendant to refuse to testify (and thus not to be a witness against himself or herself) at trial. Second, the privilege allows any person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409 (1984). An investigative interview with an FBI agent, a presentence interview with a probation officer, and a sentencing hearing before a court are all proceedings in which the privilege may be claimed.

### 1.

■ When, as here, a defendant pleads guilty to a crime, he admits his commission of that crime and waives his privilege as to the acts constituting it.[2] *United States v. Yurasovich*, 580 F.2d 1212, 1218 (3d Cir. 1978); *Namet v. United States*, 373 U.S. 179, 188, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278 (1963); *United States v. Rodriguez*, 706 F.2d 31 (2d Cir.1983); *United States v. Moore*, 682 F.2d 853, 856 (9th Cir.1982). As this court has had occasion to note, however, "pleading guilty to counts involving one set of offenses [does not] by its own force ... waive a privilege with respect to other alleged transgressions for which charges are dropped, and which were

**2.** Accordingly, the Fifth Amendment privilege is not implicated when a defendant is asked to talk about the crime to which he has pled guilty and about his or her attitude concerning that crime.

Nor is the privilege implicated if the sentence imposed is more harsh because of the defendant's response to that interrogation.

not admitted."[3] *Yurasovich,* 580 F.2d at 1218; *see also Rodriguez,* 706 F.2d at 31; *Moore,* 682 F.2d at 856; *United States v. Zirpolo,* 704 F.2d 23, 25 (1st Cir.1983); *United States v. Pierce,* 561 F.2d 735, 738 (9th Cir.1977). Neither this court nor any other of which we are aware has specifically addressed and decided the question whether a guilty plea waives the privilege with respect to conduct that is not necessary to the offense of conviction but was a part of the same episode or transaction.

In *Yurasovich,* we stated that the "precise outlines of the 'waiver [by plea]' doctrine are not clarified by the case law, and the theoretical underpinnings of the rule remain shrouded in some uncertainty." 580 F.2d at 1218. We noted that there were two rationales suggested in prior cases that could justify extending "the 'waiver' arising from admission of a crime ... beyond the immunity conferred by the double jeopardy clause." *Id.* The first was that questioning regarding details of the crime to which a plea has been entered beyond the core facts constituting the offense will often lack any realistic potential for *further* self-incrimination beyond that occasioned by the plea itself. Under this rationale, a defendant subjected to questioning by the state retains the ability to assert his privilege if the response concerning conduct relating to the offense of conviction would increase his exposure to conviction for another crime beyond any exposure created by the plea itself. The second rationale, which has a potentially larger scope, was founded in "a disinclination to allow witnesses to utilize the Fifth Amendment to expurgate their testimony once it is freely begun." *Id.* at 1219. Under this rationale, the waiver by plea might be extended to details of the episode constituting the crime of conviction where necessary to prevent the defendant from giving a misleading impression of that episode. On the facts of *Yurasovich,* neither rationale warranted a holding that the defendant had made a waiver beyond the facts constituting the offenses of conviction, and we sustained the assertion of the privilege.

Here Frierson argues that, despite his plea to bank robbery by intimidation, he retained the right to assert the privilege in response to questioning concerning his use of a gun. We agree with him that such questioning could produce information that would enhance his exposure to criminal liability in a state prosecution for unlawful possession of a dangerous weapon or the like. *See Murphy v. Waterfront Commission,* 378 U.S. 52, 78, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964) (privilege may be asserted in federal tribunal when possibility of incrimination in state court exists). Indeed, the government conceded this much at oral argument. Thus, the first *Yurasovich* rationale does not apply because such a prosecution would not be barred by double jeopardy and such questioning would have a potential for self-incrimination beyond that inherent in Frierson's plea. It follows that Frierson's plea did not alone work a relevant waiver unless the second *Yurasovich* rationale applies here. For reasons discussed hereafter, we need not decide in this case whether to adopt the second *Yurasovich* rationale or whether the facts here bring that rationale into play. We will assume, for present purposes, that Frierson's guilty plea did not foreclose him from thereafter claiming his privilege in response to questions about his possible use of a gun. It follows that Frierson had a Fifth Amendment privilege not to speak on this subject during his presentence interview and the sentencing hearing, as well as during his interview with the FBI.

**2.**

In a number of so-called "penalty" cases, the Supreme Court has held that the

---

**3.** Interestingly, the privilege against self-incrimination seems to have originated as a protection against being forced to talk during one's criminal defense about acts beyond those of the offense charged. In 1637, John Lilburn, charged by order of the Star Chamber, agreed to answer the charges against him but refused to answer questions irrelevant to the charges against him. He stated, "if you will not ask me about the thing laid to my charge, I shall answer no more." 8 Wigmore, *Evidence* § 2250, at 282–84 (1961). For that response, he was whipped and pilloried, but the Star Chamber was soon thereafter abolished.

government may not impose a penalty on a person for asserting the Fifth Amendment privilege. *Minnesota v. Murphy*, 465 U.S. 420, 434, 104 S.Ct. 1136, 1145, 79 L.Ed.2d 409 (1984); *Lefkowitz v. Cunningham*, 431 U.S. 801, 804–08, 97 S.Ct. 2132, 2135–37, 53 L.Ed.2d 1 (1977); *Lefkowitz v. Turley*, 414 U.S. 70, 77–84, 94 S.Ct. 316, 322–25, 38 L.Ed.2d 274 (1973); *Sanitation Men v. Commissioner of Sanitation*, 392 U.S. 280, 284–85, 88 S.Ct. 1917, 1919–20, 20 L.Ed.2d 1089 (1968); *Gardner v. Broderick*, 392 U.S. 273, 276–79, 88 S.Ct. 1913, 1915–16, 20 L.Ed.2d 1082 (1968). In these cases, the Court has held that loss of job, loss of state contracts, loss of future contracting privileges with the state, loss of political office, loss of the right to run for political office in the future, and revocation of probation all are "penalties" that cannot be imposed on the exercise of the privilege. These cases "establish[ ] that a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment privilege not to give incriminating testimony against himself." *Cunningham*, 431 U.S. at 805, 97 S.Ct. at 2135.

In order to determine the Fifth Amendment implications of § 3E1.1, our first task is to determine whether denying a two-level reduction is a "penalty"; for if it is not, § 3E1.1 does not implicate the Fifth Amendment at all. It is clear that *increasing* a sentence for exercise of the privilege is a "penalty." But several courts of appeals have held that *denying* a two-level *reduction* in sentence under the Guidelines constitutes a "denied benefit" as opposed to a "penalty" and that § 3E1.1 therefore does not implicate the Fifth Amendment. *See United States v. Mourning*, 914 F.2d 699, 706–07 (5th Cir.1990); *United States v. Gordon*, 895 F.2d 932, 936–37 (4th Cir. 1990); *United States v. Trujillo*, 906 F.2d 1456, 1461 (10th Cir.1990); *United States v. Henry*, 883 F.2d 1010, 1011–12 (11th Cir.1989). Other courts of appeals have

disagreed with the characterization of a denial of § 3E1.1's two-level reduction as a "denied benefit." The Court of Appeals for the First Circuit has taken the position that a denied "reduction in ... offense level, resulting in a longer prison sentence," is a penalty. *United States v. Perez–Franco*, 873 F.2d 455, 463 (1st Cir.1989). The Court of Appeals for the Second Circuit agreed that a denied reduction in sentence is a penalty. *United States v. Oliveras*, 905 F.2d 623, 627–28 (2d Cir.1990); *see also United States v. Aichele*, 941 F.2d 761 (9th Cir.1991) (Kozinski, J., dissenting).

■ We agree with the Courts of Appeals for the First and Second Circuits. The characterization of a denied reduction in sentence as a "denied benefit" as opposed to a "penalty" cannot be squared with the reality of the sentencing calculation and conflicts with decisions of the Supreme Court and pre-Guidelines decisions of this court. Justice Powell stated the point best in his opinion for the Court in *Roberts v. United States*, 445 U.S. 552, 557 n. 4, 100 S.Ct. 1358, 1362 n. 4, 63 L.Ed.2d 622 (1980): "We doubt that a principled distinction may be drawn between 'enhancing' the punishment imposed upon the petitioner and denying him the 'leniency' he claims would be appropriate if he had cooperated." [4]

The Supreme Court's Fifth Amendment penalty cases have never drawn such a distinction, and their facts suggest the fallacy of doing so. Probation has been regarded traditionally as a form of leniency and revocation of probation as the denial of a privilege. Yet the Supreme Court acknowledged in *Minnesota v. Murphy*, 465 U.S. at 435, 104 S.Ct. at 1146, that the threat of the revocation of probation is the type of penalty that implicates the Fifth Amendment. The Court stated that the state "could not constitutionally carry out a

---

**4.** Congress or the Commission of course could have set the base offense level for every offense two levels lower and required a two-level *enhancement* for defendants who do not affirmatively demonstrate acceptance of responsibility. Since an increase rather than a denied reduction would be involved, presumably all would

acknowledge that this system would impose a penalty for failure to accept responsibility. Yet probation officers and sentencing judges would do exactly what they do now, and defendants would receive the same sentences as they do now.

threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." *Id.* at 438, 104 S.Ct. at 1148. The Court's unanimous decision in *Lefkowitz v. Turley,* 414 U.S. at 77–84, 94 S.Ct. at 322–25, declared unconstitutional a New York statute that required that public contractors either waive immunity and testify concerning their contracts or lose their current contracts *and* future contracting privileges. The Court held that both of these sanctions were "penalties," although loss of current contracts would seem to be a "penalty" and loss of future contracting privileges a "denied benefit" within the meanings generally ascribed to those terms. The Court's decision in *Lefkowitz v. Cunningham,* 431 U.S. at 804–08, 97 S.Ct. at 2135–37, similarly did not distinguish between termination of present office and disqualification from holding any office for five years; both were penalties that could not be imposed on the exercise of the privilege.

In addition, pre-Guidelines decisions by this court and others treat the denial of leniency as a penalty that cannot be imposed or threatened on the assertion of the privilege. In *United States v. Garcia,* 544 F.2d 681, 684–86 (3d Cir.1976), this court stated:

> The appellants were put to a Hobson's choice: remain silent and lose the opportunity to be the *objects of leniency,* or speak and run the risk of additional prosecution. A price tag was thus placed on appellants' expectation of maximum consideration at the bar of justice: they had to waive the protection afforded them by the Fifth Amendment. This price was too high.

*Id.* at 685 (emphasis added). This court in *Garcia* correctly treated the denial of leniency because of the defendants' failure to cooperate with law enforcement personnel as a penalty that could not be imposed on the exercise of the privilege. We again treated a denial of leniency as a penalty in *United States v. Heubel,* 864 F.2d 1104, 1111 (3d Cir.1989). Other courts have followed the same approach. In *United States v. Messer,* 785 F.2d 832, 834 (9th Cir.1986), for example, the Ninth Circuit

held that a "court cannot condition leniency upon a defendant's refusal to admit to a crime not charged."

Finally, the Supreme Court's interpretation of the Ex Post Facto Clause supports the position that a denied reduction in sentence is the equivalent of an increase in sentence. The Ex Post Facto Clause prohibits "every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull,* 3 U.S. (3 Dall.) 38, 390, 1 L.Ed. 648 (1798). In *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court treated a denied reduction in sentence as the equivalent of an increase in sentence for ex post facto purposes. The Court held that a statute reducing the amount of good time credits that could be earned in prison to reduce the sentence is barred by the Ex Post Facto Clause prohibition of increased punishment. The Court did not distinguish a denied reduction in sentence (as that case involved) from an increase in sentence; it merely stated:

> On its face, the statute reduces the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks. By definition, this reduction in gain-time accumulation lengthens the period that someone in petitioner's position must spend in jail.... Here, petitioner is similarly disadvantaged by the *reduced opportunity to shorten* his time in prison simply through good conduct.... The fact remains that an inmate who performs satisfactory work and avoids disciplinary violations could obtain more gain time per month under the repealed provision ... than he could for the same conduct under the new provision.

*Id.* at 33–35, 101 S.Ct. at 967 (emphasis added).

In sum, a number of courts, including the Supreme Court and this court, have recognized that denial of leniency is a penalty which cannot be imposed for the defendant's assertion of his or her Fifth Amendment privilege. We agree and hold that an

increase in sentence or a denied reduction in sentence is a penalty in the context of Fifth Amendment jurisprudence.

**3.**

We have thus far concluded that Frierson had a Fifth Amendment right to refuse to answer questions at any point during the sentencing process in response to questioning about his use of a gun while in the bank and that he could not be penalized (i.e., denied a two-level reduction for acceptance of responsibility) for electing to exercise that privilege.

■ It is well established, however, that the Fifth Amendment privilege against self-incrimination is not self-executing and thus must be claimed when self-incrimination is threatened. *Minnesota v. Murphy,* 465 U.S. at 429, 104 S.Ct. at 1143. This rule means that a person cannot ordinarily complain on Fifth Amendment privilege grounds to the use of information supplied by him or her unless the privilege was asserted at the time the information was given.

The Supreme Court has recognized a few limited exceptions to the rule that the privilege is not self-executing; in these exceptional cases, statements are deemed "compelled" and are inadmissible although the privilege was never claimed. One exception applies in the context of federal occupational and excise taxes on gamblers. *See Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). Another involves confessions obtained from suspects in police custody. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). These exceptions are not at issue here.[5] The exception at issue in this case arises when the government threatens to penalize the assertion of the

privilege, and thereby "compels" incriminating testimony. *Minnesota v. Murphy,* 465 U.S. at 434–39, 104 S.Ct. at 1145–48; *Garrity v. New Jersey,* 385 U.S. 493, 496–500, 87 S.Ct. 616, 618–20, 17 L.Ed.2d 562 (1967). This is a corollary to the principle discussed above that the government may not impose a penalty because a person has elected his or her privilege.

*Garrity* illustrates this exception. There, police officers were questioned during a state investigation and told that they would be removed from office if they refused to answer questions on Fifth Amendment or any other grounds. After this threat was made, the officers answered the questions, and the answers were used against them in a subsequent criminal prosecution and conviction. The Supreme Court held that their answers to the questions posed during the investigation had been compelled by the threat of the loss of their jobs and could not be used against them in a subsequent proceeding. *Garrity,* 385 U.S. at 497, 87 S.Ct. at 618. In *Minnesota v. Murphy,* however, the Supreme Court held that the "penalty" exception does not apply to situations like the one now before us. It is *Murphy* that provides the rule of decision for this case.

**4.**

In *Murphy,* the condition of Murphy's probation required him to be truthful "in all matters" with his probation officer; if he was not, his probation would be revoked. The probation officer asked Murphy a question about any past crimes, and Murphy revealed information about an earlier rape and murder that he had committed. This statement was then used to prosecute him for murder. Murphy argued that the statement should have been inad-

---

**5.** Frierson has not raised a *Miranda* claim concerning the presentence interview. Most courts of appeals that have addressed the issue have concluded that the prophylactic rule of *Miranda* is not triggered by a routine post-conviction presentence interview. *See United States v. Cortes,* 922 F.2d 123, 126–27 (2d Cir.1990); *United States v. Rogers,* 921 F.2d 975, 979–82 (10th Cir.1990); *United States v. Miller,* 910 F.2d 1321, 1326 (6th Cir.1990); *United States v. Jackson,* 886 F.2d 838, 841–42 n. 4 (7th Cir.1989).

Nor does Frierson raise a Sixth Amendment claim that his attorney was prevented from accompanying him to the presentence interview. The courts are divided on whether the presentence interview is a "critical stage." *Compare United States v. Saenz,* 915 F.2d 1046, 1048–49 (6th Cir.1990) *and United States v. Herrera–Figueroa,* 918 F.2d 1430, 1433–37 (9th Cir.1990) *with United States v. Woods,* 907 F.2d 1540, 1543 (5th Cir.1990) *and Jackson,* 886 F.2d at 845. We leave these issues for another day.

missible in his murder trial because the statement to the probation officer had been compelled.

Murphy claimed that the requirement to be truthful in all matters had been a threat that his probation would be revoked if he claimed his Fifth Amendment privilege and refused to answer his probation officer's questions. The Supreme Court disagreed. The Court concluded that Murphy's statement had not been compelled because no one had ever stated to Murphy that his probation would be revoked if he exercised the privilege. The Court held that the threatened penalty must be specifically addressed to the exercise of the privilege for the defendant to claim ex post that he had been compelled to speak; it was not enough that the defendant may have reasonably believed his probation would be revoked for failing to answer his probation officer's questions. *Murphy*, 465 U.S. at 436–39, 104 S.Ct. at 1147–48.

Importantly, the Court noted that the case would have come out the other way if either of the following had occurred. If Murphy had asserted his privilege to the probation officer and the state had revoked Murphy's probation because of that assertion, that would have been an unconstitutional penalty imposed on the exercise of the privilege. *Id.* at 438, 104 S.Ct. at 1148. Similarly, if Murphy had been told that he could not refuse to answer on Fifth Amendment grounds—i.e., that his probation would be revoked if he claimed the privilege—and Murphy then talked to the probation officer, the statements would be considered "compelled" and could not be used against Murphy. *Id.* at 435, 104 S.Ct. at 1146. Because neither situation occurred in Murphy's case, however, the statements were voluntary and admissible. Minnesota had not taken the "extra, impermissible step" of threatening a penalty on the assertion of the privilege. *Id.* at 436, 104 S.Ct. at 1147.

Justice Marshall in dissent in *Murphy* argued that the "reasonable layman" would understand the requirement that he be truthful "in all matters" or lose probation to include a threat that probation would be revoked if he refused to answer on Fifth Amendment grounds. *Id.* at 447, 104 S.Ct. at 1152 (Marshall, J., dissenting). The majority disagreed. For statements to be considered compelled, the Court required that the threat of punishment be conditioned on the assertion of the privilege; a general requirement of truthfulness or disclosure could not be used after the fact to claim that incriminating statements had been compelled.

*Murphy* indicates that requiring a defendant to accept responsibility in order to obtain a sentence reduction is not a threat to impose punishment for an assertion of the privilege. Section 3E1.1 of the Guidelines is no more susceptible to a reading that a heavier sentence will be imposed on one taking the Fifth than is a rule that one's probation will be revoked if one fails to answer the questions of one's probation officer candidly. In either case, the person being questioned may fear that he or she will be more likely to suffer a penalty if the questions go unanswered, but the penalty will not be imposed for the claiming of the privilege. Thus, in neither case does the one being interrogated have an excuse for failing to claim the privilege. It follows that if a defendant does not claim the privilege when asked during the sentencing process about acts beyond the acts of the offense of conviction, any subsequent statements are considered voluntary and may be considered by the sentencing judge in determining whether to grant a reduction for acceptance of responsibility.

■ As we have noted, Frierson was interviewed by the FBI in January of 1990, before he had been indicted for the bank robbery. At this point, Frierson could have refused to talk to the FBI agent, but he did not elect that alternative. The government made no threat of any kind concerning assertion of the privilege. Frierson told the FBI agent that he had committed the bank robbery but had not used a gun. This statement was voluntary.

Frierson's presentence interview with the probation officer took place about five months later, after Frierson had pled guilty to robbery by intimidation. The govern-

ment made no threat directed against assertion of the privilege. Nevertheless, Frierson once again failed to assert his privilege. Before the presentence interview, the government provided Frierson a copy of a Delaware federal district court case in which that court had refused to grant a reduction for acceptance of responsibility in circumstances nearly identical to this case. That case did not concern a threat that a penalty would be imposed in the event the defendant claimed his privilege; it merely stated more explicitly what the Guidelines themselves require: that a defendant must accept responsibility for relevant conduct beyond the offense of conviction to obtain the reduction. As with the Guidelines themselves, this was not a threat sufficient under *Murphy* to hold any subsequent statement "compelled." Frierson told the probation officer what he told the FBI agent: that he robbed the bank but did not use a gun. This statement to the probation officer was voluntary.

Because the statements to the FBI agent and the probation officer were not compelled within the meaning of the Fifth Amendment, the district court was free to rely on them in denying the two-level reduction for acceptance of responsibility. And that is exactly what the district court here did, stating at the conclusion of the sentencing hearing. "The Probation Staff was ... warranted in refusing to grant a two-level reduction for the acceptance of responsibility." App. at 37. The court thus adopted the recommendation of the probation officer based on the FBI's and his own interview with Frierson.

In sum, Frierson did not claim the privilege in his meetings with the FBI agent or the probation officer, and in neither interview was he threatened that the reduction would be denied if he invoked the privilege. Thus, those statements were voluntary and could be used to show that he had not accepted responsibility for all of his "criminal conduct." The district court correctly relied on them.[6]

### IV.

It follows from what we have said that a defendant who denies the offense or denies related criminal conduct at trial or during the sentencing process may be denied the two-level reduction on that basis. This, however, does not exhaust the Fifth Amendment issues that will be presented in the context of § 3E1.1, and we pause before concluding to emphasize the limited scope of our decision. This case involves a defendant who voluntarily responded to questions and denied a portion of the criminal conduct that the court found to have taken place. This case does not involve a defendant who remained silent when questioned about related conduct beyond the offense of conviction without claiming the Fifth Amendment privilege. Nor does it involve a defendant who consistently relied upon his privilege when questioned about related conduct beyond the offense of conviction. We express no opinion concerning such cases.[7] We do, however, venture sev-

---

6. As we read the record, the district judge did not rely upon anything that happened at the sentencing hearing in resolving the "acceptance of responsibility" issue; he merely adopted the conclusion of the probation officer based on Frierson's interview with the FBI and the probation officer. We, therefore, do not reach the issue of whether the district court could have relied upon counsel's representation that Frierson denied possession of a gun. Given that this representation was tendered in order to persuade the court to reject the presentence report's conclusion on the *fact of gun possession* and to deny the government's request for a three-level addition, the district court may well have been able to consider that denial as a judicial admission without running afoul of the Fifth Amendment.

7. We also express no opinion on whether a convicted defendant who exercised his privilege at trial has a Fifth Amendment right not to discuss his *offense* pending direct appeal. The traditional rule is that a convicted defendant has no Fifth Amendment privilege with respect to the acts constituting the offense of conviction. See *Reina v. United States*, 364 U.S. 507, 513, 81 S.Ct. 260, 264, 5 L.Ed.2d 249 (1960); *United States v. Romero*, 249 F.2d 371, 375 (2d Cir.1957) ("It is well established that once a witness has been convicted for the transactions in question, he is no longer able to claim the privilege of the Fifth Amendment and may be compelled to testify.").

In apparent contrast, some courts have been receptive to recognizing a Fifth Amendment right after conviction so long as the case is on

eral words of advice to sentencing trial judges because of the likelihood that such cases will arise.

■■■ In a case where the defendant has consistently asserted the privilege as to acts beyond those of the offense of conviction, a sentencing judge confronting an acceptance of responsibility issue obviously must not draw any inference from the fact that the privilege has been claimed. That implies that, when the defendant has consistently asserted the privilege as to acts beyond those of the offense of conviction, the judge cannot rely on the defendant's failure to admit to such acts as a basis for denying the two-level reduction. But that in no way implies an automatic two-level reduction for such a defendant. The sentencing judge must address the acceptance of responsibility issue on the basis of all of the record evidence relevant to that issue. One probative fact will be whether the defendant has admitted the conduct constituting the offense of conviction. But the record may contain other helpful facts as well. Application Note 1 to § 3E1.1 lists six factors other than admissions by the defendant to consider in determining acceptance of responsibility; and that list is not exhaustive.[8]

The tension between Fifth Amendment privilege and § 3E1.1 is greatest when the rule's assignment of the burden of proof to the defendant comes into play. It is at least questionable whether a sentencing judge in a case where the defendant has acknowledged responsibility for the offense of conviction but has claimed the privilege with respect to aggravating related conduct can deny the two point reduction based solely on the defendant's failure to carry his burden of proof with respect to the acceptance of responsibility for his criminal conduct. We express no opinion on that issue. Nevertheless, the fact that reliance on § 3E1.1's allocation of the burden of proof raises a difficult Fifth Amendment issue counsels against a sentencing judge resolving an acceptance of responsibility issue on the basis of that allocation when the record contains evidence from which a fair inference can be drawn. When there is probative evidence in the record, the sentencing judge believes a satisfactory inference can be drawn one way or the other, and he or she records the conclusion reached and its basis, any potential conflict with the Fifth Amendment privilege in all likelihood will be averted.

### V.

We summarize our holdings:

1. The sentencing court in determining a specific offense characteristic must consider all relevant criminal conduct under § 1B1.3 of the Guidelines, regardless of whether such conduct was also covered in a count of the indictment dropped pursuant

---

direct appeal. *See Frank v. United States,* 347 F.2d 486, 491 (D.C.Cir.1965) ("the Government may not convict a person and then, pending his appeal, compel him to give self-accusatory testimony relating to the matters involved in the conviction"); *see also McCormick on Evidence,* § 121, at 290 (3d ed. 1984) ("the mere fact of conviction does not remove the danger of incrimination" because accused may "fear that compelled disclosures might consequently incriminate him in a reprosecution following invalidation of his present conviction").

In a similar vein, Judge Kozinski has recently suggested that the acceptance of responsibility determination in a case where the defendant did not take the stand at trial should be postponed until direct appeals are completed. *See United States v. Aichele,* 941 F.2d 761 (9th Cir.1991) (Kozinski, J., dissenting).

We leave this issue for another day.

**8.** Application Note 1 to § 3E1.1 provides:

1. In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, the following:

(a) voluntary termination or withdrawal from criminal conduct or associations;

(b) voluntary payment of restitution prior to adjudication of guilt;

(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense; and

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

to a plea agreement. We thus affirm the three-level increase in sentence for gun possession.

2. The sentencing judge may consider "related conduct" as well as conduct constituting the offense of conviction in determining under § 3E1.1 whether a defendant is entitled to a two-level reduction for acceptance of responsibility.

3. For Fifth Amendment purposes, a denied reduction in sentence is equivalent to an increase in sentence; both are "penalties."

4. In this case, the reduction was denied neither because of an exercise of the Fifth Amendment privilege, nor because of any statements compelled pursuant to a threat against exercise of the privilege. The reduction was denied on the basis of voluntary statements by Frierson in which he denied possessing a gun. Therefore, we uphold the district court's denial of the two-level reduction.

We will affirm the judgment of sentence.

GARTH, Circuit Judge, concurring and dissenting:

I agree with the majority opinion's analysis and holdings respecting "relevant conduct," including conduct beyond the offense of conviction.[1] However, I cannot agree that this record permits Frierson's sentence to be affirmed where the sentencing judge conditioned a two-level reduction in Frierson's offense level for "acceptance of responsibility"[2] on Frierson's admitting that he had possessed and brandished a gun—an admission that would incriminate Frierson in a future state criminal prosecution. *See Minnesota v. Murphy,* 465 U.S. 420, 434–39, 104 S.Ct. 1136, 1145–48, 79 L.Ed.2d 409 (1984).

Accordingly, I would vacate Frierson's sentence and remand to the district court for a determination of the incident or incidents on which the district court relied when it decided not to grant Frierson the two-level reduction. Such a determination is mandated by the Supreme Court's unequivocal instruction that the State may not seek "to induce [an individual] to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids." *Minnesota v. Murphy,* 465 U.S. 420, 434, 104 S.Ct. 1136, 1146, 79 L.Ed.2d 409 (1984) (quoting *Lefkowitz v. Cunningham,* 431 U.S. 801, 806, 97 S.Ct. 2132, 2136, 53 L.Ed.2d 1 (1977)).[3]

### A.

Three different incidents occurred which implicate Frierson's constitutional rights under *Murphy.* First, the record reveals that the FBI interviewed Frierson about two weeks after the bank robbery to which he pleaded guilty. During that interview,

---

1. I therefore join the majority of the court in affirming the three-level enhancement of Frierson's sentence for possession of a gun.

2. U.S.S.G. § 3E1.1 addresses adjustment of the offense level based on a defendant's acceptance of responsibility:

   *Acceptance of Responsibility*
   (a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.
   (b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.
   (c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

3. *See also Cunningham,* 431 U.S. at 803–07, 97 S.Ct. at 2134–36 (state could not remove political party officer from position and bar him for five years from holding any other party or public office on basis of his refusal to waive privilege against compelled self-incrimination); *Lefkowitz v. Turley,* 414 U.S. 70, 82–84, 94 S.Ct. 316, 324–25, 38 L.Ed.2d 274 (1973) (state may not bar public contractors from state contracts because of contractor's refusal to waive Fifth Amendment privilege); *Gardner v. Broderick,* 392 U.S. 273, 276–79, 88 S.Ct. 1913, 1915–16, 20 L.Ed.2d 1082 (1968) (policeman who refused to waive his Fifth Amendment privilege may not be dismissed from office because of that refusal); *Uniformed Sanitation Men v. Commissioner of Sanitation,* 392 U.S. 280, 283–85, 88 S.Ct. 1917, 1919–20, 20 L.Ed.2d 1089 (1968) (city workers were unconstitutionally discharged from employment where discharge was based on their refusal to waive their right against self-incrimination).

Frierson denied having used a gun to commit the robbery. I agree with the majority, (Maj. Op. at 662), that this denial is, on this record, untainted by any threat implicating the Fifth Amendment. Nothing in this record establishes that when, during his FBI interview, Frierson denied using a gun, he had been threatened or made aware of any coercive threat. The second and third incidents involving Frierson's denial of the use of a gun, however, present far different situations.

## B.

During Frierson's pre-sentence interview, he again denied having used a gun. This second denial occurred after the government had informed Frierson of the facts and oral rulings in an unreported case from the District of Delaware, *United States v. Eugene Dean*, No. 88–42 (D.Del.), thereby confronting Frierson with the choice of either incriminating himself to obtain a lesser sentence or suffering a greater sentence by his denial. In *Eugene Dean*, the judge withheld Dean's two-level reduction for "acceptance of responsibility" because Dean refused to admit that he had possessed a gun. By bringing that opinion to Frierson's attention, the government implicitly threatened Frierson that Frierson would forfeit the two-level reduction in his offense level if he did not admit to his possession and use of a gun during the bank robbery.

The doctrine of *Murphy* should thus preclude the district court from relying on Frierson's denial as reported in the presentence report. The Court in *Murphy* taught that a state may not threaten anyone with a penalty if the resulting admission would incriminate that person in a future criminal proceeding. *Murphy*, 465 U.S. at 435, 438 & n. 7, 104 S.Ct. at 1146, 1148 & n. 7.

While the Court held that no violation of the Fifth Amendment occurred in *Murphy*, it did so on the ground that Minnesota had made no threat that, should Murphy fail to admit his earlier conduct, it would revoke his probation. *Id.* at 436, 437–38, 104 S.Ct. at 1147, 1147–48. The Court in *Murphy* found that a probation condition that required Murphy to be truthful with his probation officer "in all matters" did not threaten to penalize nondisclosure. "On its face, Murphy's probation condition proscribed only false statements; it said nothing about his freedom to decline to answer particular questions...." *Murphy*, 465 U.S. at 437, 104 S.Ct. at 1147. Thus, Murphy was not threatened with the loss of his probationary status if he exercised his Fifth Amendment privilege. The Court's discussion of such a threat, had it been made, however, makes clear that an admission resulting from such a threat would be an unconstitutional coerced admission.

The majority opinion misconstrues *Murphy* to stand for the proposition that a threatened penalty implicates the Fifth Amendment only if it is "specifically addressed to the exercise of the privilege." (Maj. Op. at 661). Yet the Court in *Murphy* asserted just the opposite view: "There is ... a substantial basis in our cases for concluding that if the State either expressly *or by implication* asserts that invocation of the privilege would lead to revocation of probation ... the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in criminal prosecution." *Murphy*, 465 U.S. at 435, 104 S.Ct. at 1146 (emphasis added). Here, the government's threat to Frierson violated the doctrine of *Murphy* because it effectively denied him the right to remain silent without incurring a penalty.

The majority also errs when it asserts that for Murphy's answers to have been considered compelled, "it was not enough that [Murphy] may have reasonably believed his probation would be revoked for failing to answer his probation officer's questions." (Maj. Op. at 661). In fact, the *Murphy* Court explicitly determined that Murphy had no reasonable cause to believe that his silence would be penalized and that therefore Murphy was never threatened. "If Murphy did harbor a belief that his probation might be revoked for exercising the Fifth Amendment privilege, that belief would not have been reasonable." *Murphy*, 465 U.S. at 438, 104 S.Ct. at 1148.

Frierson, in contrast, was told quite clearly that his silence would be penalized. After the government made Frierson fully aware of the *Eugene Dean* opinion, it had to be evident to Frierson that his continued denial of the possession of a gun could lead to no alternative but a greater sentence.

### C.

The third incident that implicated Frierson's rights under *Murphy* was Frierson's decision not to testify at the sentencing hearing. Having already been threatened by the prospect of a greater sentence, Frierson was cognizant of the constitutional dilemma which he faced: if he admitted the possession of a gun, he stood in jeopardy of another criminal prosecution; if he exercised his Fifth Amendment privilege, he would lose the opportunity of obtaining a two-level reduction in his offense level. Frierson's decision not to testify, like his denial at the presentencing interview that he had possessed a gun, could not therefore support the district court's decision to deny Frierson a two-level reduction in his offense level.

### D.

The record does not reveal on which of these three incidents the district court based its refusal to award Frierson the two-level reduction.[4] When the district court ruled that it would withhold a two-level reduction because Frierson had failed to accept responsibility by admitting to the

---

**4.** The majority reads the record to exclude the possibility that the district judge based its denial of the two-point reduction on anything that happened at the sentencing hearing. (Maj. Op. at 662 n. 6). The record contains nothing to support this conclusion. Even if the majority is correct in this, however, it would still be necessary to remand the case to the district court in order to determine whether the district court relied on Frierson's statements to the FBI agent or on his statements to the probation officer.

**5.** *See U.S.S.G.* § 3E1.1, comment. (n. 1(g)) ("In determining whether a defendant qualifies for this provision, appropriate considerations include, but are not limited to, ... the timeliness of the defendant's conduct in manifesting the acceptance of responsibility."). Even where a

possession of a gun, the court did not specify whether it was relying on (1) Frierson's post-arrest denial that he possessed a gun which he made to the FBI agent; (2) Frierson's denial of possession which he made to the probation officer at the presentence interview; (3) Frierson's failure to testify at the sentencing hearing, or (4) some combination, if not all, of these three incidents. The instruction of *Murphy* satisfies me that the district court, if it had relied on Frierson's denial to the probation officer or on Frierson's failure to testify at the sentencing hearing, would have violated Frierson's constitutional rights. If, however, the district court had focused solely on Frierson's encounter with the FBI which took place soon after the bank robbery, then no coercive threat was made; nor was Frierson, according to the present record, made aware of any such threat which could affect his Fifth Amendment rights.

I acknowledge that the district court had the discretion to rely upon any or all conduct of Frierson in deciding whether Frierson had "accepted responsibility" so as to be entitled to a two-level reduction in his offense level.[5] Unfortunately, the record is devoid of any discussion by the district court as to the basis for its § 3E1.1 decision. Even though Frierson's conduct at the time of the FBI interview could support a denial of a two-level reduction, this court cannot cure the absence of the district court's reasoning or a finding, particularly a finding so essential to the district court's exercise of its discretion.[6]

---

defendant ultimately accepts responsibility for conduct encompassed within the offense of conviction by pleading guilty, a denial of the conduct at some earlier stage in the case may provide a basis for a district court to withhold the two point reduction. See § 3E1.1(c) ("A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.").

**6.** Nor could we hold, on facts that could either defeat the district court's ruling or that could support it, that the failure to provide the basis for the determination or to make an essential finding was harmless error. *See Arizona v. Fulminante,* — U.S. —, —, —, 111 S.Ct. 1246, 1256–58, 1260–62, 113 L.Ed.2d 302 (1991) (harmless error analysis measured by reasonable doubt standard).

I would vacate Frierson's sentence and remand to the district court for resentencing limited to the district court's reconsideration of whether a two-level reduction should be afforded to Frierson in light of the above considerations.

I therefore dissent from the majority judgment which affirmed the district court's judgment of sentence.